## SKINKER *v.* STATE

[No. 251, September Term, 1964.]

*Decided June 14, 1965.*

*William M. Cave* for appellant.

*Donald H. Noren, Special Attorney,* with whom were *Thomas B. Finan, Attorney General, Leonard T. Kardy* and *James J. Cromwell, State's Attorney* and *Deputy State's Attorney,* respectively, *for Montgomery County,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Montgomery County revoking the appellant's probation before verdict, entering a verdict of guilty, and sentencing the appellant to confinement in the Maryland Institution for Men for an indefinite term not to exceed four years (dating from May 25, 1964).

At the outset, we consider that the jurisdiction of this Court to entertain an appeal from an order revoking probation has been settled by *Coleman v. State,* 231 Md. 220, 222, 189 A. 2d 616 (1963). In that case the State moved to dismiss upon the ground that in granting and striking out probation, the lower court was exercising a special, limited power, not known to the common law and created wholly by statute, and that, therefore, no appeal would lie to this Court in the absence of an express law permitting one. We denied the State's motion, and re-affirmed our ruling in *Swan v. State,* 200 Md. 420, 425,

90 A. 2d 690 (1952) that an appeal would lie "if only for the purpose of determining whether that discretion [given to the trial court] has been abused in any way, or whether an erroneous construction has been placed by the trial judge on the conditions of the parole." The case at bar appears to be the first case dealing generally with the imposition of probation before verdict at the Circuit Court level and the problems attendant upon its revocation (cf. *State v. Jacob*, 234 Md. 452, 199 A. 2d 803 (1964), a case dealing with the authority of a Circuit Court, on writ of certiorari, to review and vacate the action of a trial magistrate who had placed a defendant on probation before verdict). We are of the opinion that the reasons for permitting appellate review in *Swan* and *Coleman* apply with equal vigor to the case before us and that the appeal is properly here.

The facts of the instant case may be summarized as follows: Michael Skinker was indicted on April 21, 1964 by the grand jury for Montgomery County for forging (count one) and uttering (count two) a charge account receipt of Humble Oil & Refining Company, in the name of one Henry Brylawski, with intent to defraud. Skinker was "arraigned" on May 4, 1964 at which time he filed an affidavit alleging his lack of funds with which to employ counsel; counsel was present at all subsequent stages of the proceedings. On May 25, 1964 the docket entries show that the case came on for hearing, that the defendant was re-arraigned (or formally arraigned), and that a plea of guilty was entered. The docket next records an oral motion by the defendant to withdraw his plea of guilty, and that the court orally granted such motion. Then, still on the same day, there was filed a written motion by counsel to grant "probation without finding a verdict as provided for by Section 641 of Article 27 of the Annotated Code of Maryland (1957 Edition)." The docket entries show that the court orally granted this motion.

There is, in the record before us, no transcript of the testimony taken before Judge Moorman on May 25th, if any was taken. In any event no such testimony could accurately be termed "evidence" against appellant on the forgery and uttering charges, since: 1) after a plea of guilty, "the necessity for a trial is obviated," (*Ogle v. Warden*, 236 Md. 425, 426, 204

A. 2d 179 (1964), and all that remains is the matter of sentencing; 2) in exercising intelligently the discretion reposed in him with respect to punishment, the trial judge may consider and rely upon many kinds of information which "would be unavailable if * * * restricted to that given in open court by witnesses subject to cross-examination,"—*Driver v. State,* 201 Md. 25, 33, 92 A. 2d 570 (1952), (see *Costello v. State,* 237 Md. 464, 206 A. 2d 812 (1965))—as well as data and oral hearsay which may draw upon every aspect of the defendant's life.

The record before us, however, does contain a transcript of the oral conditions imposed by Judge Moorman in granting probation before verdict to appellant at the May 25th hearing, which were two in number. First, the court directed appellant to "make restitution of $450.00 to the people from whom you stole the money and who had to pay it"; second, the court cautioned appellant "that while you are in the State of Maryland * * * you maintain a code of conduct that is acceptable to all people." Approximately a month later, Judge Moorman ordered the Clerk of the Circuit Court to issue a bench warrant "for the arrest of Michael Edward Skinker for violation of probation."

On June 30, 1964 a hearing was held before Judge Moorman to determine whether Skinker had violated the terms of his probation. A Marine Corps sergeant assigned to the Armed Forces Apprehension Center testified that Skinker had been a member of the Marine Corps prior to and through May 25, 1964; that he was reported as absent without official leave shortly after the Circuit Court proceedings of that date; and that he had subsequently been declared a deserter from the Corps. The appellant admitted his desertion but stated that in his opinion such conduct did not violate either of the conditions of probation imposed by the court. He further admitted that he had stolen a tire and had concealed a .25-caliber automatic pistol on his person at the time of the theft, but indicated that such activity also did not violate those conditions because it took place entirely within the District of Columbia. (The State contends that comprehensive "good conduct" is an implied condition of every probation). Omitting the colloquy between the court and the defendant, it is sufficient for the pur-

poses of this case to say that Judge Moorman ordered the clerk to "strike the entry of probation without verdict," and to "enter a plea of guilty," which was later amended to "verdict of guilty." After further colloquy he sentenced appellant to confinement in the Maryland Institution for Men for an indeterminate sentence not to exceed four years (forging and uttering a "writing obligatory" is by statute a felony punishable by a maximum of 10 years in the penitentiary, Code, Art. 27, Sec. 44). The defendant filed timely notice of appeal.

In Maryland, probation without verdict, as distinguished from probation upon the conditional suspension either of the execution or of the imposition of a criminal sentence (see *Brown v. State,* 237 Md. 492, 207 A. 2d 103 (1965), is of relatively recent origin. Chapter 316 of the Laws of 1957 was the first law giving authority to *all* of the circuit courts of the state and to the Criminal Court of Baltimore to place a person accused of crime on probation without finding a verdict; [1] Chapter 616, § 22 of the Laws of 1961 granted such authority to the Circuit

---

1. Chapter 436 of the Laws of 1955 codified as Annotated Code (1951), Art. 27, Sec. 726A, was the forerunner of the present provision. That earlier law contained grants of powers almost identical substantively with those of the current law, but limited their applicability to the circuit courts of the counties comprising the Second Judicial Circuit of Maryland.

The Act of 1955, Chapter 436, in turn, was taken almost verbatim from the provisions of the Charter and Public Local Laws of Baltimore City (1949 edition), section 277 derived from Laws of 1931, Chapter 132, §351B). The approach, structure, and language of Section 277 are essentially the same as the comparable provisions of the 1955 law—the one cardinal difference being the matter with which this opinion is concerned, that of probation without verdict. §277(2) empowers the criminal court, before conviction, with the defendant's written consent, to "place such person on probation *before or after commitment and incarceration."* §641 of Article 27 of the current Code empowers the criminal courts, before conviction, with the written consent of the person accused, to place such person on probation *without finding a verdict."* (Emphasis supplied). One effect to be deduced from this key difference is that the authority of the Criminal Court of Baltimore to place an accused on probation without finding a verdict, derives from the quoted provisions of the Code, and not from the provisions of the Charter and Public Local Laws of Baltimore City.

Courts and the Criminal Court of Baltimore upon appeals from the Municipal Court of Baltimore City. The present provisions of the general law are codified as Code (1964 Supp.), Article 27, §641. That section provides:

> "The circuit courts of the several counties in this State and the Criminal Court of Baltimore City, before conviction of any person accused of crime with the written consent of the person so accused, including persons appealing from convictions before trial magistrates or before the Municipal Court of Baltimore City, whether a minor or an adult, and after conviction or after a plea of guilty or nolo contendere, without such consent, are empowered, during the term of court in which such consent, conviction or plea is had, to:
>
> (1) Suspend the imposition of sentence; or
>
> (2) Place such person on probation without finding a verdict; and
>
> (3) Make such conditions of suspension of sentence and probation as the court may deem proper."

Unlike the suspension of the imposition of or the execution of a criminal sentence, which can be exercised "only when there has been a conviction and sentence thereon, probation without verdict, if granted, avoids any finding of guilt" (*State v. Jacob, supra,* 234 Md. at 455). Avoidance of the stigma of a criminal record, indeed, is the very *raison d'etre* of the procedure. There is, however, a singular lack of authority in the United States in regard to the scope, procedure, and nature of probation without verdict.[2]

---

2. The Federal Probation Law presupposes a conviction; Title 18 U.S.C. §3651 begins: "Upon entering a judgment of conviction * * * any court having jurisdiction * * * when satisfied that the ends of justice and the best interest of the public as well the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best." The introductory word "upon" means "after." Kirk v. U. S., 185 F. 2d 185 (9 Cir., 1950).

The American Law Institute's Model Penal Code (Proposed Of-

At the outset of this opinion, we indicated that the propriety of the lower court's action in revoking Skinker's probation is properly before us on this appeal. The existence of "violation of probation" as a distinct and independent offense; and the nature of, and the procedural safeguards surrounding, the revocation hearing, are matters which we have just recently had

ficial Draft, 1962) contains no indication of such a procedure; see §301.1. Readily distinguishable are §6.05(3) and §306.6, which become operative only after a lawful conviction and sentence.

England experimented with a species of probation without conviction during the period 1907-1948. The statute of 7 Edward VII, Chapter 17, known as the Probation of Offenders Act of 1907, authorized magistrates' courts (but not courts of quarter sessions or courts of assize) to grant probation "without proceeding to conviction." Earlier statutes had already authorized the practice of probation *per se*. (e.g. the Summary Jurisdiction Act of 1879, 42 and 43 Vict., c. 49, s. 10). See Orfield, Criminal Procedure from Arrest to Appeal (1947), page 531-532; Jackson, Machinery of Justice in England (2d ed., 1940), pp. 161-168, (3d ed., 1960), pp. 181-189. The English probation order derived from the earlier system of recognizances or "common law binding over." Instead of passing sentence (e.g. fine or imprisonment), the court could require a convicted person to execute a document known as a recognizance, in effect a penalty bond, with or without sureties, wherein he agreed to forfeit *x* pounds to his Sovereign Lady the Queen unless he should thereafter keep the public peace and be of good behavior. 10 Halsbury's Laws of England (3d. ed.), §904-910. Entry of a conviction (after 1907) was apparently deemed unnecessary, inasmuch as upon failure to satisfy the conditions of a recognizance, "the sheriff enforces the forfeiture by levying the amount of the recognizance on the goods and chattels of the recognisor, and if sufficient goods and chattels cannot be found, by seizing his body" *(loc. cit.,* §907).

The difficulties inherent in probation without conviction vis-a-vis judgment, appealability, and so forth, were brought to light in the leading case of Oaten v. Auty, [1919] 2 K.B. 278. The lower court had determined that the criminal charge (evasion of military service) was proved, but believing any punishment to be "inexpedient," it "dismissed" the indictment and placed the defendant on probation. (The register of court contained the entries: "Plea—not guilty. Offense proved, dismissed under the Probation of Offenders Act, inexpedient to punish"). The five judges hearing the case on appeal to the King's Bench Division delivered *seriatim* opinions, in which they roundly condemned the device of probation without conviction:

Justice Darling: "In this case the justices dismissed the information, and it is said there was no conviction, order, or determina-

occasion to consider; *Scott v. State,* 238 Md. 265, 208 A. 2d 575 (1965). In the case at bar, however, the appellant argues a second, and far more serious, issue: the validity *vel non* of the entire probation-without-verdict proceedings *ab initio.* Because of our views on this second issue, we find it unnecessary to consider whether Judge Moorman abused his discretion in revoking appellant's probation, and will dispose of the case

tion from which an appeal lies at the instance of the present appellant. The words of s.1 of the Probation of Offenders Act, 1907, are unscientific, thoroughly illogical, and are merely a concession to the modern passion for calling things what they are not; for finding people guilty and at the same time trying to declare them not guilty. Here the justices have found the offense proved—they use the word 'offence'—and they make an entry to that effect in the register of the Court, but because they acted under the Probation of Offenders Act, 1907, and considered it inexpedient to inflict any punishment, it is said that no appeal lies. If this appellant cannot appeal a grave injustice might be done." * * * "The Probation of Offenders Act, 1907, has allowed the justices to find all the facts that make a person guilty but to enter in their record that he is not guilty. The logical and proper procedure would have been to provide that the justices should record that in view of the trivial nature of the particular offence or for one or other of the reasons mentioned in the Act no punishment would be inflicted and the accused might appeal, punishment or no punishment, in this case against the stigma placed upon him as a person who has broken a law which goes to the safety of the country. For the reasons I have given I think that, notwithstanding all the ambiguities and difficulties with which the point has been involved by the Legislature, an appeal lies in this case."

Justice Bray: * * * "It is said that it may be a great hardship upon an accused if he is dealt with under that section and so has a finding that the charge preferred against him has been proved and he be without a right of appeal. That may be so. But the fact does not justify us in distorting the language of the statute. In this case I cannot construe what was done by the justices as a 'conviction.' I therefore disregard that word, and I come to the word 'order.' The only order made was one dismissing the information."

Justice Lawrence: "What we are asked is whether the justices came to a correct determination in point of law. What is the determination to which they have come? They neither convicted nor acquitted the appellant, and he is entitled, like every other subject, to have the offence dealt with to the end either by acquittal or conviction. * * * If they thought he was subject to the Military Service

solely on the basis of the second issue raised. We hold that the oral order of the lower court purporting to grant probation without verdict was invalid from its passage because of the absence of any written consent of the defendant filed in the proceedings, and that the requirement of the statute that such consent be given, is mandatory. We further hold that the "Motion for Probation without Verdict" filed and signed by appel-

---

Acts they should have convicted him, and they were wrong in trying to escape from this by applying the Probation of Offenders Act, 1907. I therefore think the appeal can be heard."

Justice Avory: "It is in my opinion the duty of the Court, if possible, to make sense of the words of a statute rather than to make nonsense of them. Sect. 1. sub-s. 1, of the Probation of Offenders Act, 1907, may be made sensible by reading the words 'the Court may, without proceeding to conviction' as meaning 'the Court may, without proceeding to record the conviction.' I have no doubt that that was what was intended by the Legislature."

Justice Lush: "A. T. Lawrence, J., has said that this appellant has been neither convicted nor acquitted. I should prefer to say that he has been both convicted and acquitted. Upon the merits of the case the justices have convicted him. I can see no difference between saying 'offence proved' and saying 'we convict of the offence.' So far, however, as the form is concerned, they have acquitted him. This is highly illogical. When I ask myself whether there has been a 'determination' against the appellant I must answer in the affirmative. The justices have found that the appellant has committed the offence charged in the information. Serious consequences follow from that determination; nothing follows from the form of the record. The determination of fact not only exposes this man to obloquy; it makes him liable under the Military Service Acts. It is said by Mr. Branson that there is no right of appeal because there is only one determination, one dismissing the information. I do not agree. The real substantial determination is that the appellant is guilty, and inasmuch as the Summary Jurisdiction Act, 1879, gives a person aggrieved the right to appeal against a determination against him this appellant has a right of appeal."

Professor Edwin H. Sutherland, in an article entitled *The Position in the United States with Regard to Probation and Conviction,* 19 Canadian Bar Review 522 (1941), states: "Conviction is always a prerequisite to probation in the United States, with two nominal exceptions described below [juvenile court probations]. * * * We now pass to the question of the merits of ordering probation without conviction. This, in the first instance, is a question of terminology. It is necessary that the court be convinced that the defendant

lant's counsel was insufficient to constitute "* * * the written consent of the person so accused * * *,"[3] required by §641.

In the present case, while Skinker had originally elected to plead guilty, the record discloses that this plea was withdrawn on the same day, with the consent of the court. No later plea was ever made; hence, no plea was properly before the court, unless it be an "automatic" plea of not guilty under Maryland Rules 721 or 722. There has never been a trial on the merits, or a determination that Skinker is guilty beyond a reasonable doubt of forging and uttering the charge account receipt of another. Skinker finds himself in prison on the basis of 1) a grant of probation without verdict which did not comply with the requirements of the statute, 2) a revocation thereof one month later, coupled with an unwarranted entry by the court of a "verdict of guilty," and 3) a sentence to a penal institution for a period not in excess of four years—all of which took place without the prior written consent of the accused. We need only repeat that our system of jurisprudence requires a "lawful trial to convict, and a lawful conviction to sentence"; *Ruckle v. War-*

has engaged in criminal behavior before probation can be ordered. Conviction is implicit in that finding and that order, and it is made explicit by the pronouncement of a few words. Consequently probation without conviction is a legal fiction. * * * If there is a real difference between the offenders placed on probation without conviction and those placed on probation with conviction, it would appear that other and more important variations could be made in the methods of treatment than this arbitrary and formal difference."

See the collection of comments contained in 19 Canadian Bar Rev. 500-524 (1941). A comprehensive Criminal Justice Bill of 1938 proposed to continue the use of probation without conviction. See The English Criminal Justice Bill, 40 Col. L. Rev. 105 (1940) at 110 (n. 26-30), 116-121. Due to the pressures of World War II, the bill was never passed. In 1948 the Criminal Justice Act of 1948 (11 and 12 Geo. VI, c. 58) was enacted; by its terms, a conviction is now required in *all* courts before "probation orders" can be made. See 28 Halsbury's Statutes of England (2d ed.), at page 353.

3. We do not feel that so formal a procedure as was employed here (a written "motion," addressed to the court, signed by counsel, served on the State's Attorney, and filed with the clerk of the court with an "affidavit of service" appended) is required in making what is, in its essence, a mere request to the court to consider granting probation to the defendant without finding a verdict.

*den,* 335 F. 2d 336, 338 (4 Cir., 1964) *cert. den.* 379 U. S. 934, 85 S. Ct. 330, 13 L. Ed. 2d 345 (1964). The judgment below must be reversed and the case remanded for a trial.

*Judgment reversed and case remanded for trial.*