KENNETH RICARDO JOHNSON $v$ STATE OF
MARYLAND

[No. 444, September Term, 1973.]

*Decided May 20, 1974.*

The cause was argued before GILBERT, MENCHINE and MOORE, JJ.

*Donna C. Aldridge* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Stephen C. Orenstein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, Kenneth Ricardo Johnson, was convicted by a Prince George's County jury of the crime of burglary and sentenced by the court (Powers, J.) to a twelve year term of imprisonment. His appeal raises four contentions:

1) The court erred in not granting his request for a rule on witnesses before the completion of opening statements and in denying his motion for a mistrial based thereon;

2) the court erred in permitting the State to amend Count Two of the indictment, alleging housebreaking;

3) the evidence was not sufficient to support his conviction; and

4) the court denied him due process by sentencing him "to a longer term based upon his not

> admitting guilt but instead pleading not guilty
> and testifying in his own behalf."

We treat these contentions in the order presented and affirm the judgment of conviction.

I

The case came on for trial on May 16, 1973. After the Assistant State's Attorney had commenced his opening statement, defense counsel apologized for interrupting and requested a rule excluding witnesses, to which the court responded:

> "Very well, I will do that when the opening statements are over. I don't want to interrupt this now.
>
> Go ahead."

At the conclusion of the State's opening statement, defense counsel moved for a mistrial. The court denied the motion and also denied counsel's renewed request for a rule on witnesses prior to making his own opening statement:

> "MR. FOLSTEIN: I would ask you to make the rule on witnesses at this point before I make an opening statement.
>
> THE COURT: You are not supposed to. You don't have to until after the opening statement is over. You can leave the first witness in and have the others go out. It disrupts things having witnesses going back and forth. The purpose has nothing to do with opening statements. If the witness doesn't know as much about the case as will be told on opening statement, the attorneys would be lax or —
>
> MR. FOLSTEIN: I feel he has been prejudiced by the fact that he has heard the State's entire proposition of the case, the legal points he has to score and everything else.
>
> THE COURT: How has he been prejudiced?
>
> MR. FOLSTEIN: He has been prejudiced by

telling the Court everything that this witness has to know. The main witness is Mr. Stevenson, whose house was broken into.

THE COURT: Don't you think they have discussed the case before? I don't want to waste anymore time.

MR. FOLSTEIN: Will you rule on witnesses?

THE COURT: I will announce the rule when you finish the opening statement."

Counsel then delivered his opening statement. At its conclusion, the court ordered the sequestration of the witnesses.

Md. Rule 753 provides in relevant part:

"The court may upon its own motion and shall, upon the request of a party, order that the witnesses be excluded from the courtroom until called upon to testify."

The primary purpose of the rule is to prevent prejudice and to insure, as far as possible, that one witness shall not be taught, schooled or prompted by another witness' testimony. *Conway v. State,* 15 Md. App. 198, 289 A. 2d 862 (1972); *Jones v. State,* 11 Md. App. 468, 275 A. 2d 508 (1971). When the request for exclusion of witnesses is made, it is mandatory that the trial court comply with the request. *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433 (1959); *Pinkney v. State,* 12 Md. App. 598, 283 A. 2d 800 (1971). The failure to comply with the rule does not constitute reversible error *per se,* however. *Hurley v. State,* 6 Md. App. 348, 251 A. 2d 241 (1969); *Jones v. State, supra.* The real question is whether the action of the lower court in denying a request for the exclusion of witnesses or in allowing the witness to testify where there has been a violation of the exclusion rule constituted prejudicial error. *Bulluck v. State, supra; Swift v. State,* 224 Md. 300, 167 A. 2d 762 (1961).

In stating that the purpose of the sequestration rule "has nothing to do with opening statements," the trial court had

the support of Wigmore (6 Wigmore, *Evidence*, 3rd ed. § 1840):

> "The *time* for sequestration begins with the delivery of testimony upon the stand and ends with the close of testimony.
>
> "It is therefore not appropriate during the reading of the pleadings or the opening address of counsel; any danger of improper suggestions at such times is to be dealt with in other ways." (Emphasis in original.)

In *Bulluck, supra,* the Court of Appeals recognized that this principle may not be valid for all situations. *Bulluck* involved the claim of an appellant that because the case turned on his being identified as the rapist, the trial court's refusal to grant his request that all witnesses be sequestered before he was called upon to stand and plead, was prejudicial error. Judge Hammond (later Chief Judge), writing for the Court observed:

> "If identification is a crucial or important factor in a case, exclusion of witnesses, before the accused is put physically in a position where it is apparent that he is the accused, may be necessary for his proper protection."

The Court went on to say, however:

> "We assume, without deciding, that the appellant's request should have been granted, but we think no prejudicial error resulted from its denial."

Neither is it necessary for us in this case to decide whether the lower court was correct in stating categorically that the witness exclusion rule "has nothing to do with opening statements," and in granting appellant's request only after the opening statements were completed because the record before us is convincing that appellant suffered no prejudice from the court's action.

Four witnesses testified for the State, the prosecuting

witness, James Stevenson, and three members of the Prince George's County police department. While the record affords practically no enlightenment on this point, we shall assume all four witnesses heard the State's opening statement, which outlined in detail the (relatively simple) facts as to which each would testify.[1] Mr. Stevenson testified in substance that he had left his house at approximately 6:00 p.m. on January 6, 1972 after locking the doors; that it was "about dark" when he left; that he returned home two hours later to find one of the panels of his jalousie-type front door removed and lying on the grass; that he discovered the interior of the house "in shambles" and determined that various objects of value had been taken including a television set, a tape recorder, and money from a plastic box-like coin container kept in the dresser drawer; and that he had never seen appellant prior to the trial and to his knowledge appellant had never been in his house.

Detective Schultz, Evidence Collection Section, Prince George's County police, testified that he had lifted several latent fingerprints from the same plastic coin container shortly after the reported burglary and turned them over to the fingerprint examiner's office. Detective Joseph Gray identified a set of fingerprints belonging to appellant which he had taken from appellant in the Sheriff's office on June 6, 1972. Andre DeGagne, police fingerprint examination supervisor, testified in some detail on the nature of fingerprint identifications. He then stated he had compared the latent fingerprints received from Detective Schultz with appellant's fingerprints rolled on June 6 and that the comparison had revealed a positive identification.

It is at once apparent, we think, that the State's witnesses could not have been "taught, schooled or prompted" in any meaningful sense by hearing one another's testimony as outlined in opening statement. Mr. Stevenson's testimony was limited solely to establishing the *corpus delicti* of the burglary; he gave no evidence bearing on the issue of

---

1. It is plain from appellant's argument in brief that he does not perceive himself to have suffered prejudice from the witnesses' remaining in court during the opening statement of *defense* counsel.

appellant's criminal agency. The testimony of the police witnesses, on the other hand, involved entirely their investigation as a result of which appellant's criminal agency was established by scientific evidence — an investigation in which they played completely separate roles. Appellant recognizes that the potential for tutoring in any direction presented by this arrangement of the witnesses is negligible; thus his claim appears to be basically that Stevenson was instructed in "key points" of his *own* testimony by the State's opening remarks, *viz.*, as to the approximate value of the items missing from his home, whether he had known appellant prior to trial, and whether it was light or dark when he left his house. But it requires only common sense to recognize that Stevenson was in need of no instruction on these points. We conclude, therefore, that appellant was not prejudiced by the court's refusal to exclude the witnesses until completion of the opening statements.

Therefore, even assuming the court should have granted appellant's request when made, there was no reversible error. We pause, however, to note our agreement with the view expressed by the Court in *Martinez v. State*, 342 P. 2d 227 (Wyo. 1959), where a similar request had been made for exclusion of witnesses prior to the prosecution's opening statement:

> "We think that whenever exclusion of witnesses is indicated, the better practice is to make the exclusion at the beginning of trial." [2]

## II

Appellant next contends that the court erred in permitting the State after the close of its case to amend Count Two of the indictment, alleging housebreaking. The indictment was in four counts, each alleging the same operative facts. Except for Count Two, all alleged that the offense was committed on or about January 6, 1972; Count Two gave as

---

2. *See also* State v. Lockhart, 111 P. 853 (Idaho 1910); Brown v. State, 265 N.E.2d 699 (Indiana 1971).

the date August 6, 1972, and in moving for leave to amend the indictment the State merely sought to make the latter date conform to the date in the other counts. It is apparent that the error was typographical and that the amendment was as to form and not substance. *Tucker v. State*, 5 Md. App. 32, 245 A. 2d 109 (1968); *Mills v. State*, 12 Md. App. 449, 461, 279 A. 2d 473 (1971). Moreover appellant's own exculpatory testimony related entirely to an encounter he alleged to have taken place on the sidewalk in front of Stevenson's house on January 6, 1972, and thus he could not have been surprised by the requested amendment. We find no abuse of discretion in the court's permitting the State to amend the indictment.

## III

Appellant's third contention is that the evidence did not support his conviction "since the sole evidence was fingerprint identification without facts to indicate placement could not have been at a time other than the date of the incident." Fingerprint evidence must, of course, be coupled with evidence of other circumstances tending to reasonably exclude the possibility that the print was impressed at a time other than that of the crime. Such additional evidence need not be independent of the latent fingerprint. *Palmer v. State*, 10 Md. App. 152, 156, 268 A. 2d 582 (1970). This evidence was supplied by Mr. Stevenson's testimony that he found the coin container, emptied of its contents, in his house after the burglary and that he did not know appellant and to his knowledge appellant had never been in his house. Appellant himself testified that he had never been inside Stevenson's house but ventured to explain his fingerprints on the coin box as the result of a friend's approaching him outside the Stevenson house and asking him "to hold" the box, which appellant declined to do but merely "pushed away" the box, after which the friend was called into the Stevenson house. The jury was not, of course, required to accept this "explanation." Appellant's third contention that there were no facts "to indicate placement could not have been at a time other than the date of the incident" is without merit.

## IV

Appellant argues, finally that he was denied due process by the action of the lower court in sentencing him "to a longer term based upon his not admitting guilt but instead pleading not guilty and testifying in his own behalf." The relevant portion of the transcript of the sentencing proceedings is as follows:

"THE DEFENDANT JOHNSON: Well, I would like to, if you give me time, I'd like to get together what I'm doing at Lorton, and I've learned my lesson by being at Lorton.

THE COURT: What lesson have you learned when you were not telling the truth about it at the time of trial?

THE DEFENDANT JOHNSON: I wasn't telling the truth about it?

THE COURT: That's right. The jury didn't believe you about this wild story about a man running out and asking you to hold something; that's perfectly ridiculous. The jury didn't accept it and I didn't accept it. You weren't telling the truth.

THE DEFENDANT JOHNSON: I was telling the truth.

THE COURT: Very well. A necessary ingredient to leniency in any case is the attitude of the individual.

THE DEFENDANT JOHNSON: Yes, sir.

THE COURT: And when you sit up here and lie about it, and you're not telling the truth. You think you're trying to get away with it. That attitude is not consistent with any consideration for leniency. If you had come in here after this happened, before the other trouble you got into — if you had come in here with a plea of guilty and been honest about and said, 'Of course I did it,' which you did, you would probably have gotten a modest sentence, concurrent with the one in the District of Columbia,

and you would have gotten out of it. But with this attitude that you have you can't receive that kind of treatment.

The sentence of the Court is that you be confined under the jurisdiction of the Department of Correctional Services for a period of twelve years, to run concurrent with the sentence that you are serving in the District of Columbia."

Appellant, as indicated, was sentenced to twelve years imprisonment. Md. Code, Art. 27, § 29 provides for a maximum sentence of twenty years for burglary. We have repeatedly held that the matter of sentencing is within the discretion of the trial judge and, if within statutory limits, is generally not subject to appellate review unless dictated by passion, prejudice, ill-will, or other unworthy motive. *Johnson v. State,* 9 Md. App. 37, 39, 262 A. 2d 325 (1970); *Minor v. State,* 6 Md. App. 82, 250 A. 2d 113 (1969); *Gee v. State,* 2 Md. App. 61, 233 A. 2d 336 (1967). This rule, of course, does not immunize the procedure pursuant to which an accused is sentenced from scrutiny under the due process clause of the Fourteenth Amendment. *Baker v. State,* 3 Md. App. 251, 238 A. 2d 561 (1968). Hence, although a judge may impose a sentence in his informed discretion, a sentence predicated to some extent upon misinformation of constitutional magnitude (*e.g.,* a report of a prior conviction when such conviction was wholly unconstitutional under *Gideon v. Wainwright)* is improper. *Towers v. Director,* 16 Md. App. 678, 299 A. 2d 461 (1973). Equally improper is inquiry by the trial judge prior to imposition of sentence as to whether or not the defendant contemplates filing an appeal, since such an inquiry gives rise to an inference that the severity of the sentence is to be measured by the response of the defendant. *Mahoney v. State,* 13 Md. App. 105, 281 A. 2d 421 (1971). In *Mahoney,* however, where the sentence imposed was well within the statutory limits, Judge Gilbert, writing for the Court, found no indication that the sentence imposed was motivated by passion, ill-will, prejudice, or other unworthy motive, nor that it was "vindictive" (quoting *North Carolina v. Pearce,* 395 U. S. 711

(1969)) as a result of the defendant's response to the inquiry relative to an appeal.

Appellant argues that the decision of the United States Court of Appeals for the District of Columbia in *Scott v. United States*, 419 F. 2d 264 (1969) dictates the course we must follow here. In *Scott* the trial judge imposed the maximum sentence on a defendant in what "in essence represented a response to the fact that defendant (falsely) asserted his innocence at trial and persisted in asserting his innocence in the course of his allocution." (Leventhal, J., concurring). Rejecting arguments either that additional punishment was in order for the independent substantive offense of perjury of which the trial judge believed the defendant guilty or that the commission of perjury reflected adversely upon the defendant's prospects for rehabilitation, the Circuit Court remanded the case for resentencing. With respect to the second argument it said, in an opinion by Chief Judge Bazelon:

> "* * * the peculiar pressures placed upon a defendant threatened with jail and the stigma of conviction make his willingness to deny the crime an unpromising test of his prospects for rehabilitation if guilty. It is indeed unlikely that many men who commit serious offenses would balk on principle from lying in their own defense. The guilty man may quite sincerely repent his crime but yet, driven by the urge to remain free, may protest his innocence in a court of law. This realization, indeed, unquestionably accounts for the extreme infrequency with which convicted criminals are in fact prosecuted for perjury committed at their trials." 419 F. 2d 269.

The Court cited with approval *Thomas v. United States*, 368 F. 2d 941 (1966), in which the Court of Appeals for the Fifth Circuit held that a defendant had "paid a judicially imposed penalty for exercising his constitutionally exercised rights" when he rejected the trial court's invitation at the time of sentencing to "come clean and make a clean breast of this

thing for once and for all" and then received the maximum sentence.

In a sensitive concurring opinion in *Scott* Judge Leventhal explained his reason for concurring in the remand:

> "It is not easy for me to define why I concur in a judgment of remand. There is a natural, and I believe sound, disposition to adjust sanctions when an offender admits his responsibility. This blends in with a readiness to accept the conclusion that such a person has the stuff that portends future improvement. I dare say that many judges, possibly the overwhelming majority, respond in this way, and I am not ready, at least as of this writing, to say that their approach is inadmissible. The wellsprings of human experience are known to every parent concerned with bringing up children, and who has invoked, consciously or not, Parson Weems' account of George Washington and the cherry tree.
>
> "What we have before us is the difference of degree that amounts to a difference in kind. There is a line between responding favorably to an individual's sincere expression of remorse, and reacting in a hostile way because of a personal belief in the guilt of one who maintains his innocence and seeks review of the judgment.

> * * *

> "Taking the matter as a whole I conclude that the sentence did not reflect *an individuated judgment as to the balance of deterrence and rehabilitation applicable in appellant's case* so much as a broader approach of using a maximum sentence for a defendant who (falsely) asserts his innocence." 419 F. 2d 282. (Emphasis added.)

It appears that the federal courts of appeal are divided on the issue of whether the sentencing judge may take into account what he believes to have been false testimony of the

defendant as well as the latter's continued insistence upon his innocence at the time of sentencing. The Fourth Circuit, in *United States v. Moore*, 484 F. 2d 1284 (1973), declined to follow the holding of the District of Columbia Circuit in *Scott* that a sentencing court may not consider the defendant's credibility as a witness. In *Moore*, the trial judge had imposed a sizeable, but less than the maximum, sentence, explaining to the defendant:

> "Were it only a case of your being convicted of this offense, I would impose some sort of a sentence but not a very long one. But we have more than that here. *You took the stand in your own defense*, as you have every right to do, *but you testified falsely under oath in an attempt to exculpate yourself from this crime*. The Court should take that into account in deciding what is the proper sentence in a case of this sort." (Emphasis added.)

The Circuit Court of Appeals, in an opinion by Judge Butzner, noted that the "rule that a sentencing court may consider the defendant's credibility as a witness has been rejected by the District of Columbia Circuit and has been criticized by some commentators," but held that:

> "Having reexamined the reasons for and against the rule and the record in this case, we decline to hold that the district court erred in sentencing Moore." [3]

---

**3.** The court "caution[ed], however, that sentencing judges should not indiscriminately treat as a perjurer every convicted defendant who has testified in his own defense." Judge Craven, in an opinion concurring in the result on the basis of Peterson v. United States, 246 F. 118, *cert. denied* 246 U. S. 661 (1918) — a decision which in his view the Court en banc should overrule — was more emphatic:

"I am very strongly of the opinion that a trial judge may not properly impose a harsher sentence upon a defendant because he thinks the defendant lied on the witness stand. Such a practice will inevitably chill and hamper, if not ultimately destroy, the right to testify in one's own defense. It seems to me unconscionable that a defendant must run the risk of conviction of the offense charged and at the same time run the gauntlet of disbelief." 484 F. 2d 1288.

In *United States v. Cluchette,* 465 F. 2d 749 (9th Cir. 1972) the U. S. Court of Appeals said, upon similar facts:

> "During the course of sentencing, the judge expressed the view that appellant had been less than candid ('I use charitable words') in his sworn testimony. We find nothing offensive in the judge's comments. *A sentencing judge cannot put out of his mind the impressions a defendant may give while on the witness stand and should not try to sentence in a mental vacuum.* Here, there is no evidence that the sentencing judge was in any way biased or prejudiced. The imposition of an 18 month sentence on each count, to run concurrently, on convictions where he could have imposed a sentence of 15 years on each count forecloses any thought that the judge was unfair." 465 F. 2d 754. (Emphasis added.)

In *United States v. Wallace,* 418 F. 2d 876 (6th Cir. 1969) the trial judge had observed at sentencing:

> "If Mr. Wallace had come in here and faced up to it and simply admitted to what in this Court's mind was proven to practically a mathematical certainty, that ... in our judgment would have been a probation situation."

The trial judge then imposed a "committed sentence." The Circuit Court stated:

> "Without reaching a question not reached on this record, namely, may a sentencing judge consider whether a defendant has plead 'Guilty' or 'Not Guilty' in determining sentence, we hold that *he may properly consider the fact that a defendant's sworn testimony is inconsistent with the court's finding (or the jury's verdict) of guilty.* Indeed, in some such instances the conclusion that the defendant has committed perjury may be inescapable, a circumstance a sentencing judge might well be censored [sic] for ignoring." (Emphasis added.)

In *Gollaher v. United States,* 419 F. 2d 520 (9th Cir. 1969), *cert. denied* 90 S. Ct. 434, the court dealt with a situation where the defendant continued to insist upon his innocence at sentencing. The trial judge rebuked him for his failure to confess to the crimes of which he had been convicted and indicated he was taking this failure into consideration in setting sentence. Nonetheless, the court imposed considerably less than the maximum sentence. In concluding that the court had not erred in the imposition of sentence the appellate court discussed at length the "dilemma" posed to the sentencing judge — and, indeed, to the convicted defendant:

> "This case presents a dilemma which every trial judge faces at the time of sentence. It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault. In the present state of the criminal law, there is no doubt that punishment is still a consideration in the imposition of sentence, especially where non-violent or economic crimes are involved. But to the extent that rehabilitation is the objective, no fault can be found of the judge who takes into consideration the extent of a defendant's rehabilitation at the time of sentence.
>
> "If the trial judge makes no mention of his thoughts on this subject, any sentence within legal limits will stand against attack. But, if the judge tells the defendant what he has in mind, the judge can anticipate an attack upon the sentence similar to the one at hand. No matter how artfully it may be put, the defendant will know that if he acknowledges that he has come to recognize his guilt, this may well result in a lesser sentence. He is then up against a hard choice of whether to forego some potential attacks upon the judgment or face a stiffer sentence. If he makes the latter choice, and his conviction is upheld, he is forced to rely upon the action of the Board of Parole. If he is in fact innocent, then he must have faith that this will

ultimately be established and act accordingly. On the other hand, after the defendant has been convicted, the judge must proceed upon the basis that the defendant is guilty.

"Justice is better served by a forthright disclosure of the state of mind of the judge. While the considerations thus exposed are difficult, at least the defendant has the advantage of knowing what they are and can make his decisions accordingly. A proper sentence takes into consideration the kind of crime committed and the kind of man who committed it. To belabor a distinction between the considerations just discussed and a sentence which is in part imposed as a penalty for going to trial would be a waste of time.

"Gollaher chose to insist upon his innocence. The judge, bound by the jury's verdict and apparently also being firmly convinced by the evidence that Gollaher was guilty, proceeded accordingly. He had before him a man unwilling to take the first step toward rehabilitation and he imposed sentence accordingly. Gollaher's Fifth Amendment rights were not infringed." 419 F. 2d 530.

The view that an admission of guilt at the time of sentencing is a "first step toward rehabilitation," the absence of which the judge may properly take into consideration, has been criticized. In *State v. Poteet*, 295 A. 2d 857 (1972), Chief Judge Weintraub, speaking for the Supreme Court of New Jersey said:

"But when the defendant has already been convicted an admission of guilt is of doubtful value. We do not say the sentencing judge may not find otherwise in a given case. . . . Generally, however, a confession at that point is of little rehabilitative significance. In any event, the sentencing judge should not himself seek to induce a defendant to confess. The danger of misunderstanding and of

unintended coercion is too great. * * * A confession at that juncture is worth too little to compensate for the risk that the defendant who does not yield will believe he was punished additionally because he did not.

"Hence we would disapprove a practice of calling routinely upon defendants at sentencing to disavow their stance of innocence." 295 A. 2d 859.

And as said by Chief Judge Bazelon in *Scott*, supra:

"The trial judge was eager for an acknowledgment of guilt presumably because a confession might indicate repentance. But the appellant could reasonably have believed that he could show penitence — real or affected — only at the price of prejudicing his appeal, if not worse. Whether the trial judge intended or not 'to bargain thus with the defendant,' we conclude that 'the court was without right . . . to put a price on an appeal.' " 419 F. 2d 268.

It is necessary, we think, in determining whether a given sentence impermissibly penalizes a defendant for the exercise of his Fifth Amendment rights, to distinguish between the situations of the defendant:

1) who pleads not guilty and stands trial, without testifying;
2) who takes the stand and testifies (more or less falsely, in the sentencing judge's view) in his own behalf;
3) who continues to insist on his innocence at sentencing.

We have no hesitation in stating that to impose an added sentence based on 1), without more, would be constitutionally improper. "An accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty." *Baker v. United States*, 412 F. 2d 1069 (5th Cir.

1969). As stated by Mr. Justice Black in *North Carolina v. Pearce, supra,* (concurring in part and dissenting):

> "The danger of improper motivation is of course ever present. A judge might impose . . . a specially severe penalty because a defendant exercised his right to counsel, or insisted on a trial by jury, or even because the defendant refused to admit his guilt and insisted on any particular kind of trial. In all these instances any additional punishment would of course be . . . flagrantly unconstitutional." 395 U. S. 742.

Similarly, we share the feeling of disapproval expressed by Chief Judge Weintraub in *Poteet* of "a practice of calling routinely upon defendants at sentencing to disavow their stance of innocence" and we incline to his view that when the sentencing judge "himself seek[s] to induce a defendant to confess," "[t]he danger of misunderstanding and unintended coercion is too great," as a rule, to afford a resulting confession serious rehabilitative significance. Moreover we are not entirely convinced that in this respect "[j]ustice is better served by a forthright disclosure of the state of mind of the judge" (*Gollaher, supra*) as to the prerequisites of leniency if the result is to put the defendant "up against a hard choice of whether to forego some potential attacks upon the judgment or face a stiffer sentence." [4]

---

4. Heyward v. State, 161 Md. 685, 158 A. 897 (1932), while not involving an explicit attempt to elicit a confession at sentencing, is instructive. The defendant had evidently not testified at trial. After the rendition of the verdicts by the jury and before imposing sentence the court asked him two questions, and when one of his answers in effect acknowledged guilt, the court had him sworn as a witness. The court then repeated the question: "Now, Gorman, what do you want to say about your circumstances as touching sentence? How long have you been operating? A. About three months." At this point defense counsel stated: "If your Honor please, isn't that unusual? * * * To ask the man to testify." The court replied: "He has not testified and this is not a trial. They are both up here now for sentence and I want to know . . . whether they wish to say anything either in mitigation or explanation, either or both. * * * Now, there is a maximum penalty here and I am simply giving them an opportunity to tell me whatever they may wish to tell me of the circumstances surrounding their activities, the duration and extent of them, all of which would be in

It is another matter, however, where the defendant takes the stand and testifies in his behalf. While in this instance it would indeed "be conceptually wrong to enlarge the crime for which a defendant is being punished by adding to it a finding of perjury" (*Poteet, supra*), at the same time "[i]n assaying the prospects for rehabilitation, the court must look at the man as well as the offense, and it is here that a defendant's attitude toward the truth is not irrelevant" (*ibid.*). The same distinction, admittedly fine, was made by the Supreme Court of Wisconsin in *Lange v. State,* 196 N.W.2d 680, 684 (1972):

> "We agree . . . that it is impermissible for a trial judge to add to a convicted defendant's sentence an additional term for the crime of perjury. * * * *We have, however, frequently pointed out that the trial judge's appraisal of a defendant's attitude, including the evidence of his veracity at trial is highly relevant to the exercise of sentencing discretion.* * * * In reviewing the record of the sentencing procedures, there is no evidence that the trial judge imposed an additional term because the defendant had committed the additional crime of perjury. Rather, the judge's utterances were references to the defendant's pattern of conduct which was relevant in determining the necessity of rehabilitative, custodial treatment and incarceration for the crimes which had been charged or proved." (Emphasis added.)

We can find no fault with, and affirm for this Court, the proposition that the trial judge's appraisal of a defendant's

---

mitigation of punishment, that is all. Now, if they do not wish to mitigate it in any way or give me any information that would tend to mitigate it, they have a perfect right to refuse to make any statement." In reply to the court's statement counsel for the defendant said that he thought it better that his client should not make any statement and requested that the court's question be stricken out, which was refused.

The Court of Appeals said of this procedure: "This was, we think, unusual and without legal justification." It held, however, that "if this question were one by which the judgment appealed from could be affected on review, there was no exception to bring it before us to be reviewed." 161 Md. 697.

attitude, including the evidence of his veracity at trial, is highly relevant to the exercise of sentencing discretion. *See also Wain v. Warden,* 215 Md. 650, 653, 138 A. 2d 482 (1957) (sentencing judge may take into consideration defendant's attitude as manifested at trial); *State v. Partlow,* 157 S.E.2d 688 (N. C. 1967); *People v. Morales,* 60 Cal. Rptr. 671 (Cal. App. 1967).

An examination of the remarks of the trial judge prior to imposing sentence in the instant case satisfies us that he was not attempting to induce the defendant to confess, although he clearly was unhappy with the defendant's failure initially to "come in here with a plea of guilty and [be] honest about" his conduct. The gravamen of the judge's disfavor, however, we are convinced, was the defendant's attitude toward the truth as manifested by his "wild story" from the witness stand which neither jury nor judge had accepted. That attitude, the judge stated, "is not consistent with any consideration for leniency." He thereupon sentenced appellant to a term considerably less than the maximum permitted by the statute. We think the court's remarks and the sentence imposed ultimately reflected a determination as to appellant's potential for rehabilitation, rather than a desire to penalize him for not confessing his guilt or to "enlarge" the crime for which he was being punished by adding to it a finding of perjury. We believe the sentence imposed reflected "an individuated judgment as to the balance of deterrence and rehabilitation applicable in appellant's case." A sentencing judge cannot, indeed, as stated by the Court in *Cluchette, supra,* "put out of his mind the impressions a defendant may give while on the witness stand and should not try to sentence in a mental vacuum." Appellant was not denied due process by the sentence imposed.

*Judgment affirmed.*