JOHNSON *v.* STATE OF MARYLAND

[No. 119, September Term, 1974.]

*Decided April 16, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, George A. Eichhorn, III, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Stephen C. Orenstein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Kenneth Ricardo Johnson, the petitioner, after failing in the Court of Special Appeals (*Johnson v. State,* 21 Md. App. 214, 319 A. 2d 581 (1974)) to obtain a reversal of his burglary conviction by the Circuit Court for Prince George's County (Ralph W. Powers, J.), was granted his request for certiorari by this Court so that we could review the prison sentence he received for that criminal act. The scope of this Court's review, as directed in the writ, is "limited solely to the question [of] whether the [trial] court denied . . . [Johnson] due process by sentencing him 'to a longer term based upon his not admitting guilt but instead pleading not guilty and testifying in his own behalf.' "

As there are no issues before us concerning the conduct of the trial, a skeletal review of what occurred there will suffice.[1] Johnson was indicted on four counts — burglary, housebreaking, larceny and receiving stolen goods — and,

---

1. For additional factual background, see the opinion of the Court of Special Appeals, Johnson v. State, 21 Md. App. 214, 319 A. 2d 581 (1974).

having pleaded not guilty to all charges, was tried by a jury on May 16, 1973. At that trial the petitioner testified at length in his own behalf, the general theme of which was a protestation of his innocence. But this was to no avail, as the jury found the accused guilty on the burglary count. After that verdict was recorded, Judge Powers, on June 20, 1973, directed that Johnson be imprisoned for twelve years.

In reviewing the legality of this sentence we are fully cognizant of the fact that, in this State, the awesome responsibility of imposing sentence is within the exclusive domain of the trial judge (subject to modification pursuant to the review of criminal sentence provision contained in Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 27, § 645JA-645JG), and thus his determination in this regard cannot be reevaluated upon appellate review unless either it is based upon an impermissible consideration, *Costello v. State*, 237 Md. 464, 469, 206 A. 2d 812 (1965); *Gleaton v. State*, 235 Md. 271, 277, 201 A. 2d 353 (1964); *Mitchell v. State*, 82 Md. 527, 534, 34 A. 246 (1896), or is passed in violation of statute, *State Ex Rel. Sonner v. Shearin*, 272 Md. 502, 325 A. 2d 573 (1974). Since the term imposed by Judge Powers in this case (twelve years) is within the longevity limits set by statute for burglary ("not more than twenty years," Code (1957, 1971 Repl. Vol.) Art. 27, § 29), it is not in violation of the duration of imprisonment allowable by law. However, although we cannot be sure to what extent it actually affected the judge's ultimate determination, if at all, we think that certain remarks made by the sentencing judge, as they are transcribed in the record, indicate that he may have imposed sentence in this case based upon an impermissible consideration. Therefore, in order to be sure that Johnson's sentence is free of any taint, we are constrained to vacate the one imposed and remand the case so as to afford Judge Powers an opportunity to again sentence the petitioner, taking into account only permissible factors.[2]

---

2. At oral argument, counsel for the petitioner agreed that it would be appropriate to return this responsibility to Judge Powers.

The illicit component to which we refer and which might have been considered in a manner adverse to the petitioner, at the time when the duration of his sentence was decided, is the fact that Johnson entered a plea of not guilty. The evidence that this consideration may have impermissibly entered the judge's thinking is found in the colloquy which took place between Judge Powers and Johnson at the time of allocution, just prior to the imposition of sentence. In pertinent part the transcript of that dialogue reads as follows:

| | |
|---|---|
| "The court: | What lesson have you learned when you were not telling the truth about it at the time of trial? |
| The defendant Johnson: | I wasn't telling the truth about it? |
| The court: | That's right. The jury didn't believe you about this wild story about a man running out and asking you to hold something; that's perfectly ridiculous. The jury didn't accept it and I didn't accept it. You weren't telling the truth. |
| The defendant Johnson: | I was telling the truth. |
| The court: | Very well. A necessary ingredient to leniency in any case is the attitude of the individual. |
| The defendant Johnson: | Yes, sir. |
| The court: | And when you sit up here and lie about it, and you're not telling the truth. You think you're trying to get away with it. That attitude is not consistent with any consideration for leniency. If you had come in here after this happened, before the other trouble you got into — *if you had come in* |

*here with a plea of guilty* and been honest about [it] and said, 'Of course I did it,' which you did, *you would probably have gotten a modest sentence, concurrent with the one in the District of Columbia,* and you would have gotten out of it. *But with this attitude that you have you can't receive that kind of treatment.*

The sentence of the court is that you be confined under the jurisdiction of the Department of Correctional Services for a period of twelve years, to run concurrent with the sentence that you are serving in the District of Columbia.

Very well, that's all."

(emphasis added).

Generally speaking, the objectives of the sentencing judge encompass: punishment, deterrence and rehabilitation. In order to impose what is necessary to accomplish these ends, he has a very broad latitude, confined only by unwarranted and impermissible information, to consider whatever he has learned about the defendant and the crime. Such perceptions can be derived from the evidence presented at the trial, the demeanor and veracity of the defendant gleaned from his various court appearances,[3] as well as the data acquired from such other sources as the presentence investigation or any personal knowledge the judge may have gained from living in the same community as the offender.[4] *Williams v.*

---

3. Under the conclusion we reach in this case, whether the judge's attention to this factor can be restricted, as urged by the petitioner (assuming that this issue is before us), is not necessary to resolve.

4. Information utilized in sentencing but "not received from or in the presence of the defendant should be called to his attention so that he has the opportunity to refute, discredit or explain it . . . ." *Scott v. State,* 238

*New York*, 337 U. S. 241, 246, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949); *Wain v. Warden*, 215 Md. 650, 653, 138 A. 2d 482 (1958). In *Williams*, Mr. Justice Black, speaking for the United States Supreme Court, described this wide discretion in the sources and types of evidence which the sentencing judge can utilize:

> "Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations.
>
> * * *
>
> ". . . A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant — if not essential — to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.
>
> * * *
>
> ". . . To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open

Md. 265, 275, 208 A. 2d 575 (1965); see Bartholomey v. State, 267 Md. 175, 193 n. 13, 297 A. 2d 696 (1972). See also Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 41, § 124 (b) (pertaining to presentence report).

court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life." 337 U. S. at 246-50.

Likewise, this Court has recognized that, in considering what is the proper sentence for the convicted individual standing before him, the judge saddled with the responsibility can take into account a wide, largely unlimited, range of factors. *Skinker v. State,* 239 Md. 234, 210 A. 2d 716 (1965); *Scott v. State,* 238 Md. 265, 208 A. 2d 575 (1965); *Costello v. State,* 237 Md. 464, 206 A. 2d 812 (1965). As Chief Judge Murphy observed for this Court in *Bartholomey v. State,* 267 Md. 175, 193, 297 A. 2d 696 (1972):

"... to aid the sentencing judge in fairly and intelligently exercising the discretion vested in him, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed."

Indeed, it is our belief that the sentencing judge will have difficulty determining the proper sentence, in light of the complex and variable needs of society and the individual defendant, if he is forced to bridle himself with mental blinders and thus enter the process of imposing sentence with impaired vision.

Even though we firmly believe that the judge at sentencing can and should take into account a broad spectrum of considerations, there do exist, in order to protect the fundamental rights of the offender, restrictions on this latitude. Thus, in view of what is at stake for one who is charged with a crime, it is improper to conclude that a decision, constitutionally protected, not to plead guilty and in doing so to require the State to prove the defendant's guilt

beyond a reasonable doubt,[5] is a factor which ought to, in any way, influence the sentencing judge to the detriment of the accused. In the case now before us, when Judge Powers said, "if you had come in here with a plea of guilty . . . you would probably have gotten a modest sentence," he indicated that he, at least to some degree, punished Johnson more severely because he failed to plead guilty and, instead, stood trial. Although a reading of the judge's remarks in full does not necessarily demonstrate that a more severe sentence was imposed, the words just quoted manifest that an impermissible consideration may well have been employed. Any doubt in this regard must be resolved in favor of the defendant. Accordingly, our part in the administration of justice requires that we find that a consideration of Johnson's failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged. This is as unallowable a circumstance as would be the imposition of a more severe penalty because a defendant asserted his right to counsel or insisted on a jury rather than a court trial.

This view is in accord with that of nearly all of the courts, both federal and state, in this country that have directly considered this question. See, *e.g.*, *United States v. Stockwell*, 472 F. 2d 1186 (9th Cir.), *cert. denied*, 411 U. S. 948 (1973); *Baker v. United States*, 412 F. 2d 1069 (5th Cir. 1969), *cert. denied*, 396 U. S. 1018 (1970); *Thomas v. United States*, 368 F. 2d 941 (5th Cir. 1966); *United States v. Martell*, 335 F. 2d 764 (4th Cir. 1964); *United States v. Wiley*, 278 F. 2d 500 (7th Cir. 1960); *United States v. Tateo*, 214 F. Supp. 560 (S.D. N.Y. 1963); *People v. Moriarty*, 25 Ill. 2d 565, 185 N.E.2d 688 (1962); *Letters v. Commonwealth*, 346 Mass. 403, 193 N.E.2d 578 (1963); *People v. Snow*, 26 Mich. App. 510,

---

5. The constitutional protections which may be infringed upon if a penalty were attached to this decision include: Amendments V and VI to the United States Constitution and Articles 21 and 22 of the Maryland Declaration of Rights. See also § 9-107 of the Courts and Judicial Proceedings Article (1974).

182 N.W.2d 820 (1970); *State v. Poteet,* 61 N. J. 493, 295 A. 2d
857 (1972); *Hanneman v. State,* 50 Wis. 2d 689, 184 N.W.2d
896 (1971). *Cf. United States v. Carty,* 447 F. 2d 964 (5th Cir.
1971); *United States v. Levine,* 372 F. 2d 70 (7th Cir.), *cert.
denied,* 388 U. S. 916 (1967); *Griggs v. Swenson,* 352 F. Supp.
743 (W.D. Mo. 1973). The words of Judge Weinfeld in *United
States v. Tateo, supra* at 567 are particularly instructive:

> "No matter how heinous the offense charged,
> how overwhelming the proof of guilt may appear,
> or how hopeless the defense, a defendant's right to
> continue with his trial may not be violated. His
> constitutional right to require the Government to
> proceed to a conclusion of the trial and to establish
> guilt by independent evidence should not be
> exercised under the shadow of a penalty — that if
> he persists in the assertion of his right and is found
> guilty, he faces, in view of the Trial Court's
> announced intention, a maximum sentence, and if
> he pleads guilty, there is the prospect of a
> substantially reduced term. To impose upon a
> defendant such alternatives amounts to coercion as
> a matter of law."

This same principle was succinctly stated by the Supreme
Judicial Court of Massachusetts in *Letters v. Common-
wealth, supra,* 193 N.E.2d at 580, as follows:

> "But, plainly, a defendant, whatever his character,
> may not be punished for exercising his right to trial
> and, therefore, the fact that he has done so *should
> be given no weight in determining his sentence."*
> (emphasis added).

In finding Judge Powers' consideration concerning the
election by Johnson to stand trial to be impermissible, we in
no way retreat from our firm belief that justice is better
served when a judge, during the imposition of sentence,
freely and openly discloses the factors he weighed in
arriving at the final sentencing disposition. Indeed, if the

judge's considerations are exposed, the defendant will not only know the factors which went into determining the sentence and in this manner be aided in evaluating the propriety of his taking any further penalty-related action, but he might also gain some insight into himself and his behavior and thus the prospects for his rehabilitation might be enhanced.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court with instructions to vacate only the sentence which was imposed by the Circuit Court for Prince George's County and then remand the case to that Circuit Court with direction that it impose a new sentence arrived at in conformity with this opinion.*
>
> *Costs to be paid by Prince George's County.*