*Randy Morquell Brown, Gianpaolo Bottini & Kitrell B. Wilson v. State of Maryland*
Misc. No. 30, September Term 2018


**Criminal Law – Mandatory Minimum Sentences – Criminal Procedure – Plea Agreements – Binding Plea Agreement**.  Under Maryland Code, Criminal Law Article ("CR"), §5-609.1, a circuit court has discretion to decide whether or not to modify a mandatory minimum sentence previously imposed under a statute that required such a sentence for repeat drug offenders.  A circuit court has such discretion even if the mandatory minimum sentence was imposed as a result of a guilty plea pursuant to a binding plea agreement under Maryland Rule 4-243(c) that was approved by the court and the State does not consent to the proposed modification.

**Criminal Law – Mandatory Minimum Sentences – Criminal Procedure – Plea Agreements – Waiver of Right to Seek Modification of Sentence**.  Under CR §5-609.1, a circuit court has discretion to decide whether or not to modify a mandatory minimum sentence previously imposed under a statute that required such a sentence for repeat drug offenders.  A circuit court has such discretion even if the mandatory minimum sentence was imposed as a result of guilty plea pursuant to a binding plea agreement under Maryland Rule 4-243(c) that was approved by the court and the defendant waived the right to seek modification of the sentence as part of that plea agreement.

**Criminal Law – Mandatory Minimum Sentences – Criminal Procedure – Motion to Modify Sentence**.  In exercising its discretion to decide a motion under CR §5-609.1, a circuit court should ordinarily hold a hearing in order to hear argument and to resolve any disputed material facts related to the factors under that statute.  Under Maryland Rule 4-345, the court must hold a hearing before it grants a motion to modify a mandatory minimum sentence.  However, there is no requirement in the statute or rule that a circuit court hold a hearing when it denies a motion to modify a sentence.

**Criminal Law – Mandatory Minimum Sentences – Criminal Procedure – Motion to Modify Sentence – Appeals**.  An appellate court has jurisdiction of an appeal of an order denying a motion under CR §5-609.1 because that statute shifts the burden of persuasion to the State with the result that a decision on that motion is similar to a re-sentencing that results in a final judgment.  The decision on such a motion is committed to the discretion of the circuit court and the standard of review is abuse of discretion, which may include a legal error, such as the circuit court failing to recognize or exercise its discretion.

Circuit Court for Charles County
Case No. 08-K-12-000739
Circuit Court for Montgomery County
Case No. 120636C
        120416C
Argument: September 10, 2019

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 30

September Term, 2018

_____

RANDY MORQUELL BROWN

GIANPAOLO BOTTINI

KITRELL B. WILSON

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D. (Senior
Judge, Specially Assigned),
    JJ.

_____

Opinion by McDonald, J.

_____

Filed: August 24, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The Court of Special Appeals has certified to us, and we have agreed to answer, four questions of law concerning the application of the Justice Reinvestment Act ("JRA").[1] Among other things, the JRA eliminated mandatory minimum sentences of imprisonment without the possibility of parole required by existing law for defendants who were convicted of certain drug offenses and who were repeat offenders. The JRA further provided that a defendant who had received a mandatory minimum sentence prior to the elimination of such sentences could ask the court to reduce that sentence and provided some criteria for a court to decide whether to do so – a provision that has been codified in Maryland Code, Criminal Law Article ("CR"), §5-609.1.

A number of inmates currently serving mandatory minimum sentences have invoked CR §5-609.1 and filed motions to modify or reduce their sentences. Questions have arisen, however, as to the application of this provision when the mandatory minimum sentence relates to a conviction based on a court-approved plea agreement under which the prosecution, the defendant, and the court agreed that the mandatory minimum sentence would be imposed and, in particular, when the defendant waived the right to seek modification of that sentence as part of the plea agreement. In addition, procedural questions have arisen as to whether the defendant has a right to a hearing on such a motion and whether a denial of the motion is appealable.

---

[1] Chapter 515, Laws of Maryland 2016.

Pursuant to Maryland Rule 8-304, the Court of Special Appeals has certified four questions of law to us concerning CR §5-609.1 that pertain to pending appeals in that court. We granted a writ of *certiorari* related to these three cases to respond to those questions.

For the reasons set forth below, we answer the certified questions as follows:

(1) Under CR §5-609.1, a court may modify a mandatory minimum sentence that was imposed prior to the effective date of the JRA following a guilty plea pursuant to a binding plea agreement, even if the State does not consent to the modification. The decision whether to modify a mandatory minimum sentence is a matter within the sentencing court's discretion, upon consideration of the factors in CR §5-609.1(b).

(2) Under CR §5-609.1, a court may modify a mandatory minimum sentence, even if that sentence was imposed prior to the effective date of the JRA following a guilty plea pursuant to binding a plea agreement in which the defendant waived the right to seek modification of the sentence. The decision whether to modify a mandatory minimum sentence is a matter within the sentencing court's discretion, upon consideration of the factors in CR §5-609.1(b).

(3) In considering the factors set forth in CR §5-609.1(b) and exercising its discretion to decide whether to modify a mandatory minimum sentence pursuant to that statute, a court should, in most circumstances, conduct a hearing to receive evidence when such evidence will aid the exercise of the court's discretion and to hear argument from the parties concerning the application of the factors in CR §5-609.1(b). Under Maryland Rule 4-345, the court must hold a hearing before it grants a motion. There is no absolute requirement in the statute or rule to hold a hearing when the court denies a motion.

2

(4)  An appellate court has jurisdiction of an appeal of an order denying a motion under CR §5-609.1 because that statute shifts the burden of persuasion to the State with the result that a decision on that motion is similar to a re-sentencing that results in a final judgment.  The decision on such a motion is committed to the discretion of the circuit court and the standard of review is abuse of discretion, which may include a legal error, such as the circuit court failing to recognize or exercise its discretion.

## I

## Background

The certified questions concern who is eligible under CR §5-609.1 to seek reduction of a mandatory minimum sentence, whether one has a right to a hearing on such a motion, and whether one may appeal an adverse decision in the circuit court.  To provide context to our answers, we briefly outline the legal landscape under which the defendants in these cases were originally sentenced, describe the relevant provision of the JRA, and summarize the pertinent procedural events in each of these cases.

### A.    *Legal Landscape When the Defendants Were Convicted and Sentenced*

1.    Imposition and Modification of Sentence

As a general rule, a "sentencing judge is vested with virtually boundless discretion" in devising an appropriate sentence.[2]  *Cruz-Quintanilla v. State*, 455 Md. 35, 40 (2017).

---

[2] The Maryland Sentencing Guidelines, developed by the Maryland State Commission on Criminal Sentencing Policy, suggest upper and lower bounds for sentences, but those guidelines are only advisory, and a judge need not follow them.  *See* Maryland Code, Criminal Procedure Article, §§6-211, 6-216; COMAR 14.22.01.01 *et seq.*;

Such broad latitude allows for consideration of both the facts of the particular offense and of the defendant's "reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Id*. This "permits the sentencing judge to individualize the sentence to fit the offender and not merely the crime." *Id.* at 40-41 (internal quotations omitted). Sentencing in this manner is perceived as the best way to achieve the goals of the criminal justice system – "punishment, deterrence, and rehabilitation." *Johnson v. State*, 274 Md. 536, 540-42 (1975).

After imposing a sentence, the judge has discretion to modify that sentence subject to certain conditions. In particular, Maryland Rule 4-345(e) generally allows the court to modify a sentence upon a timely motion by the defendant.[3] The defendant must file the motion within 90 days of sentencing. Maryland Rule 4-345(e)(1). Once the motion has been filed, the sentencing judge may act on it immediately or may defer action on the motion for up to five years after the imposition of the original sentence. *Id*. In acting on the motion, the judge may not increase the sentence. *Id*. While the court may deny a motion under Rule 4-345(e) without holding a hearing, it may not grant a motion to modify

---

*see also* Eric S. Fish, *Sentencing and Interbranch Dialogue*, 105 J. Crim. L. & Criminology 549, 552 (2015).

[3] Other sections of that rule concern the correction of an illegal sentence, revision of a sentence in the case of fraud, mistake or irregularity, correction of a mistake in the announcement of the sentence, and modification of a sentence in a case concerning non-support or desertion. Maryland Rule 4-345(a)-(d). Those provisions are not subject to the same 90-day deadline as a motion under section (e) of the rule. However, a correction of a mistake in announcement of the sentence must be done before the defendant leaves the courtroom after sentencing. For a history of Rule 4-345(e), *see State v. Schlick*, 465 Md. 566, 574-75 (2019).

a sentence without first providing notice and an opportunity to be heard to any victims of the offense and holding a hearing on the motion. Maryland Rule 4-345(e)(2)-(3), (f).

2. Plea Agreements that Specify a Sentence and Limit its Modification

Most criminal cases are resolved as a result of a plea agreement between the State and the defendant. Indeed, more than nine out of every 10 criminal convictions results from a guilty plea. *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (noting that 97% of federal convictions and 94% of state convictions are the result of guilty pleas). And the vast majority of guilty pleas are the product of a plea agreement between the prosecution and the defendant. *See* Maryland State Commission on Criminal Sentencing Policy, *2019 Annual Report* (2020) at 44 (during fiscal year 2019, 95.1% of criminal convictions were the result of guilty pleas, with plea agreements involved in 83.9% of those convictions).

Under a typical plea agreement, the defendant agrees to plead guilty to one or more charges and the State agrees to dismiss, or to refrain from bringing, other charges against the defendant. A plea agreement may also contain other terms. For example, the State may agree to limit the recommendation that it makes to the court concerning the sentence to be imposed. The defendant may agree to cooperate with the State in an ongoing investigation or make other concessions – such as forgoing the right to seek modification of the sentence. Although plea bargaining is not specifically authorized by the State or federal constitution or by any statute, its central role in the criminal justice system has been recognized in case law and in the Maryland Rules. *See Cuffley v. State*, 416 Md. 568, 577 (2010); Maryland Rule 4-243.

Generally, a plea agreement is negotiated between the prosecution and the defendant without involvement of the court,[4] and is treated as a sort of contract between those parties. *Cuffley,* 416 Md. at 577-79. In some cases, however, the agreement between the State and defendant is explicitly made contingent on the court's agreement to bind itself to the terms of the plea bargain. Such an agreement, which we shall refer to as a "binding plea agreement,"[5] is governed by Maryland Rule 4-243(c). In Maryland, nearly half of all convictions are the result of a binding plea agreement. Maryland State Commission on Criminal Sentencing Policy, *supra*, at 44.

In a binding plea agreement, the prosecution and defendant first come to an agreement that includes a particular sentence, disposition, or other judicial action that they will jointly present to the court. Maryland Rule 4-243(a)(1)(F). They present the agreement to the court at the time of the defendant's guilty plea. The court is to either approve the agreement, including the sentence, or reject it in its entirety. Rule 4-243(c).

---

[4] Court involvement in plea bargaining can raise a myriad of issues and is discouraged or explicitly prohibited in many jurisdictions. *See Sharp v. State*, 446 Md. 669, 694-701 (2016) ("it is the role of the State, not the trial court, to make a plea offer"); Federal Rule of Criminal Procedure 11(c)(1). The procedure set forth in Maryland Rule 4-243(c) provides a limited and transparent way for the court to endorse – or not endorse – a proposed plea agreement.

[5] We use the term "binding" here with specific reference to the court, in addition to the prosecution and defendant. Such a plea agreement is also sometimes referred to as a "C plea" or an "ABA plea," in what might seem a confusing reference to the first three letters of the alphabet. "C" in this context refers to Maryland Rule 4-243(c) or the similar Federal Rule of Criminal Procedure 11(c)(1)(C). "ABA" alludes to the endorsement of binding plea agreements in a publication of the American Bar Association relating to guilty pleas in criminal cases. *See Sharp*, 446 Md. at 697-99; *Antoine v. State*, 245 Md. App. 521, 551 n.9 (2020).

6

If the court rejects the agreement, the defendant may withdraw the guilty plea and the judge who rejected the agreement may be recused from a future trial of the charges. Maryland Rule 4-243(c)(4)-(5).

If the court approves the agreement, the court "shall embody in the judgment the agreed sentence" and may deviate from that agreed-upon sentence only to the benefit of the defendant and only with the consent of both parties. Maryland Rule 4-243(c)(1)-(3). Given that the defendant presumably would consent to a deviation in the defendant's favor, this provision essentially gives the State a veto over such a departure from the agreed-upon sentence. Although it is not explicitly stated in the rule, this Court has held that, as a corollary, the court may not modify that sentence on a motion to modify or reduce the sentence under Maryland Rule 4-345(e) without the consent of the State. *Chertkov v. State*, 335 Md. 161, 174-75 (1994). In the event that the court approves the agreement but fails to impose the agreed-upon sentence or later modifies it, the State or defendant can appeal to have the agreement enforced. *Smith v. State*, 453 Md. 561, 573-75 (2017); Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-302(c)(3).

3.      Mandatory Minimum Sentences for Repeat Drug Offenders

Maryland law classifies controlled dangerous substances ("CDS") in five schedules denominated by Roman numerals, similar to the classifications in federal law, based on their association with serious addiction or abuse – Schedule I being the most serious and

7

Schedule V the least serious.[6]  CR §5-401 *et seq*.  The State criminal law defines offenses related to the manufacturing, possession, and distribution of CDS.  CR §5-601 *et seq*.

Prior to the 2016 enactment of the JRA, the State criminal law relating to drug offenses provided mandatory minimum sentences for repeat offenders convicted of offenses primarily related to the manufacturing, distribution, and possession of a quantity sufficient for a reasonable inference of an intent to distribute CDS.  *See* CR §5-608 (2012 Repl. Vol.).[7]  A second conviction involving either a Schedule I or II narcotic drug or certain hallucinogenic substances triggered a 10-year mandatory minimum sentence; a third conviction resulted in a 25-year mandatory minimum sentence; and a fourth conviction carried a 40-year mandatory minimum sentence.  CR §§5-608, 5-609 (2012 Repl. Vol.); *see Gargliano v. State*, 334 Md. 428, 440-41 (1994) (characterizing these penalties as the "two-time loser," "three-time loser," and "four-time loser" provisions).  For offenses involving other forms of CDS, a first-time conviction entailed a maximum five-

---

[6] *See* CR §5-101(g)(1).  Recent amendments that altered some of these schedules were enacted after the offenses were committed in the cases that comprise this appeal and are not relevant to our discussion.  *See* Chapter 298, Laws of Maryland 2020.

[7] The General Assembly enacted these mandatory minimum sentences during the 1980s.  *See* Chapter 470, Laws of Maryland 1982 (10-year minimum sentence for repeat drug offenses); Chapter 439, Laws of Maryland 1988 (increasing mandatory minimum sentences for third and fourth drug convictions).  That was the second iteration of the General Assembly's adoption of mandatory minimum sentences for repeat drug offenders. In 1951, the General Assembly had established mandatory minimum five-year sentences for second-time offenders and mandatory minimum 10-year sentences for third-time or subsequent offenders.  Chapter 466, Laws of Maryland 1951; *see* Note, *Narcotics Regulation*, 62 Yale L.J. 751, 769-70 & n.117 (1953).  The Legislature had repealed those provisions in 1970.  Chapter 403, Laws of Maryland 1970.

year term of incarceration without a statutory minimum; any subsequent conviction carried a two-year mandatory minimum sentence. *See* CR §5-607 (2012 Rep. Vol.). Once the elements of the offense and the defendant's repeat offender status were established,[8] the court was required to include the mandatory minimum provision in the sentence. *State v. Green*, 367 Md. 61, 80 (2001). A mandatory minimum sentence imposed under any of these provisions could not be suspended, nor would the defendant be eligible for parole during the mandatory minimum term. CR §§5-607 through 5-609 (2012 Repl. Vol.).

## B.    *The JRA and Mandatory Minimum Sentences for Repeat Drug Offenders*

The enactment of the JRA in 2016 significantly affected mandatory minimum sentences for repeat drug offenders. Among other things, the JRA prospectively eliminated those mandatory minimum sentences[9] and removed the prohibitions against the suspension of a sentence and release on parole for such defendants. Chapter 515, §2, Laws of Maryland 2016.[10] Those provisions became effective on October 1, 2017. *Id.,* §18. The JRA also provided potential retrospective relief for defendants sentenced to mandatory

---

[8] When seeking a mandatory sentence based on the defendant's repeat offender status, the prosecution must serve notice of the alleged prior conviction on the defendant before sentencing. Maryland Rule 4-245(c).

[9] The JRA did not eliminate mandatory minimum sentences for other drug offenses. *See* CR §5-612 (volume dealer); CR §5-613 ("drug kingpin"); CR §5-621 (use of weapon in drug trafficking crime); CR §5-627 (drug offense near school).

[10] The JRA also expanded and increased early-release credits for good behavior and participation in special programs for certain repeat drug offenders. Chapter 515, §§2, 14, Laws of Maryland, *codified at* Maryland Code, Correctional Services Article, §§3-704 through 3-708.

minimum terms before October 1, 2017. That provision, which is the subject of this opinion, stated in its entirety:

> (a) Notwithstanding any other provision of law and subject to subsection (c) of this section, a person who is serving a term of confinement that includes a mandatory minimum sentence imposed on or before September 30, 2017, for a violation of §§ 5-602 through 5-606 of this subtitle may apply to the court to modify or reduce the mandatory minimum sentence as provided in Maryland Rule 4-345, regardless of whether the defendant filed a timely motion for reconsideration or a motion for reconsideration was denied by the court.
>
> (b) The court may modify the sentence and depart from the mandatory minimum sentence unless the State shows that, giving due regard to the nature of the crime, the history and character of the defendant, and the defendant's chances of successful rehabilitation:
>
>> (1) retention of the mandatory minimum sentence would not result in substantial injustice to the defendant; and
>>
>> (2) the mandatory minimum sentence is necessary for the protection of the public.
>
> (c)(1) Except as provided in paragraph (2) of this subsection, an application for a hearing under subsection (a) of this section shall be submitted to the court or review panel on or before September 30, 2018.
>
> (2) The court may consider an application after September 30, 2018, only for good cause shown.
>
> (3) The court shall notify the State's Attorney of a request for a hearing.
>
> (4) A person may not file more than one application for a hearing under subsection (a) of this section for a mandatory minimum sentence for violation of §§ 5-602 through 5-606 of this subtitle.

Chapter 515, §2, Laws of Maryland 2016, *codified at* CR §5-609.1. Like the part of the JRA that prospectively eliminated mandatory minimum sentences for repeat drug offenders, this provision also became effective on October 1, 2017. *Id*., §18.

As is evident, CR §5-609.1 provided a one-year window within which a defendant currently serving a mandatory minimum sentence had a right to seek modification or reduction of that sentence pursuant to Maryland Rule 4-345. The JRA did not specifically address the application of this provision if the defendant had pled guilty pursuant to a binding plea agreement. Nor did it explicitly indicate whether a defendant would be entitled to a hearing or be able to appeal an adverse decision on a motion made under the authority of this provision.

## C.    *The Predicate Appeals Raising Legal Issues under CR §5-609.1*

The application of CR §5-609.1 has raised a number of legal issues in recent appeals to the Court of Special Appeals – in particular, whether the statute applies in cases involving binding plea agreements and plea agreements in which a defendant agreed to waive the right to seek modification of sentence, whether a defendant who seeks modification under this statute is entitled to a hearing, and whether a denial of a motion under the statute is appealable. The Court of Special Appeals has certified questions of law concerning those issues drawn from three pending appeals. We summarize the facts and procedural history of those appeals to provide context for the certified questions.

1.    *Brown v. State*: binding plea agreement; denial of motion under CR §5-609.1 following hearing

In 2012, Appellant Randy Morquell Brown,[11] who had a prior 2003 federal conviction for possession with intent to distribute cocaine, led police in a high speed chase.

_____

[11] As these cases remain pending in the Court of Special Appeals and are in this Court solely as part of a certification from that court, the parties retain the designation they

11

Upon apprehension, he was found in possession of phencyclidine ("PCP")[12] and marijuana, and admitted to dealing in PCP. On June 22, 2012, Mr. Brown was charged in a 13-count indictment in the Circuit Court of Charles County with possession with intent to distribute PCP and marijuana, possession of drug paraphernalia, and various driving offenses. The State and Mr. Brown reached a binding plea agreement under Maryland Rule 4-243(c). Pursuant to that agreement, Mr. Brown would plead guilty to a single charge of possession with intent to distribute PCP and forfeit $528 that police had seized upon his arrest. Mr. Brown also agreed that his sentence would include the then in-effect mandatory minimum sentence of 10 years imprisonment without the possibility of parole, as this would be his second conviction of a drug-related offense. In return, the State agreed to dismiss the remaining charges of the indictment and not to bring additional criminal charges in connection with an unrelated drug distribution investigation.

On January 22, 2013, the plea agreement was submitted to the Circuit Court, which approved it, and Mr. Brown pled guilty as agreed. On April 4, 2013, the court imposed the sentence contemplated by the agreement – 10 years incarceration without the possibility of parole. At the sentencing, defense counsel advised the court that he would be filing a

---

have in the intermediate appellate court. *See Thomas v. State*, 454 Md. 495, 497 n.1 (2017); *Montgomery County v. Phillips*, 445 Md. 55, 59 n.1 (2015).

[12] PCP is a Schedule I hallucinogen. CR §5-402(d)(32)-(34).

motion for reconsideration of the sentence, but would ask that the motion be held in abeyance for some time.[13]

More than three years later, following passage of the JRA (but before the effective date of the new CR §5-609.1), on October 11, 2016, Mr. Brown filed a motion to modify his sentence pursuant to CR §5-609.1 and asserted that the motion was filed with the consent of the State.[14] The State disputed the assertion that it had consented to modification and opposed the motion on the ground that the sentence had been imposed pursuant to a binding plea agreement and that the sentence could not be modified without the State's consent. The court deferred action on the motion.[15] At a hearing on April 23, 2018, after the new CR §5-609.1 had gone into effect, Mr. Brown renewed his motion to modify his sentence. The Circuit Court concluded that it lacked authority to modify a sentence imposed under a binding plea agreement without the State's consent and denied the motion.

---

[13] Mr. Brown's plea agreement did not contain a waiver of the right to seek a modification of sentence and the judge at the sentencing hearing apprised Mr. Brown of his right to file a motion for reconsideration within 90 days of the sentencing hearing.

[14] In support of his application, Mr. Brown submitted a recommendation letter from the Department of Public Safety and Correctional Services and numerous certificates for completion of classes and workshops that he had attended while incarcerated.

[15] The Circuit Court held an initial hearing regarding the motion on February 28, 2017 but determined not to take action at that time.

Mr. Brown filed a timely appeal, arguing that CR §5-609.1 authorizes a court to modify a mandatory minimum sentence without the State's consent, even when the sentence was imposed pursuant to a binding plea agreement.[16]

2. *Bottini v. State*:  binding plea agreement including waiver of right to seek modification; denial of motion under CR §5-609.1 without hearing; dispute as to appealability

On April 13, 2012, Appellant Gianpaolo Bottini was arrested after police observed him make a sale of crack cocaine and recovered cocaine and drug paraphernalia while executing a search warrant of his residence.  On May 17, 2012, Mr. Bottini, who had previously been convicted of drug offenses,[17] was indicted on two felony drug counts – distribution of cocaine and possession of cocaine with intent to distribute – in the Circuit Court for Montgomery County.  The State and Mr. Bottini later entered into a binding plea agreement pursuant to Maryland Rule 4-243(c).  In that agreement, with respect to the pending indictment, Mr. Bottini agreed (1) to plead guilty to the count of possession with intent to distribute; (2) to the imposition of a 20-year sentence, with a mandatory minimum of 10 years incarceration without the possibility of parole (as a result of a prior felony drug

---

[16] The certification of the Court of Special Appeals appears to indicate that the State agrees that the denial of Mr. Brown's motion is appealable.  Certification of Court of Special Appeals at 5 n.5.  However, we did not find such a concession in the materials available to us.  In any event, the question of appealability is clearly presented in the other two appeals on which the certified questions are based and our answer to that question would be equally applicable to Mr. Brown's case.

[17] From the transcript of the sentencing hearing, it appears that this was Mr. Bottini's third felony drug conviction and, had he proceeded to trial, he could have faced a maximum 40-year sentence, including a mandatory minimum term of 25 years.

14

conviction); and (3) to waive his right, among other things,[18] to seek a modification of the sentence. Mr. Bottini also agreed to admit to a probation violation in an unrelated case with the understanding that he would be able to ask the court to impose less than the maximum penalty with respect to that violation. In return, the State agreed to dismiss the remaining charge in the indictment. On May 10, 2013, the Circuit Court approved the plea agreement, accepted Mr. Bottini's guilty plea, and imposed the 20-year sentence, including the mandatory minimum sentence of 10 years incarceration without possibility of parole.[19]

In January 2018, following the enactment of the JRA, Mr. Bottini filed a motion pursuant to CR §5-609.1 to reduce his mandatory minimum sentence and requested a hearing.[20] On January 29, 2018, the Circuit Court denied the motion, including the request for a hearing. The Circuit Court included in its order a brief explanation that Mr. Bottini had waived his right to seek a sentence modification as part of the plea agreement.

Mr. Bottini filed a timely appeal, contending that he could not have waived a remedy that did not exist at the time of the plea agreement and, alternatively, that CR §5-609.1

---

[18] The agreement also included a waiver of his right to seek a review of his sentence by a three-judge panel pursuant to CP §8-101 *et seq.*, or to seek to participate in a drug treatment program, pursuant to Maryland Code, Health General Article, §8-507.

[19] Subsequently, Mr. Bottini was sentenced to a consecutive 20-year sentence for the probation violation.

[20] In his application, Mr. Bottini, paraphrasing CR §5-609.1, contended that "given the nature of the crime, [his] history and character, and chances for successful rehabilitation" the mandatory minimum would result in injustice to him and was unnecessary for public safety. He sent a letter to the sentencing judge, which does not appear as part of the record in this appeal.

15

superseded any prior agreement with the State. The State asserted that the denial was not appealable because, even if the Circuit Court's legal determination regarding the binding nature of the waiver factored into the ultimate decision, the denial was an exercise of the Circuit Court's discretion. In response to the State's position, Mr. Bottini argued in his reply brief that the legal grounds for the denial should be an appealable issue.

3. *Wilson v. State*: denial of motion under CR §5-609.1 without hearing; dispute as to appealability

On April 12, 2012, Appellant Kitrell Wilson, who had previously been convicted of a drug offense,[21] was indicted in the Circuit Court for Montgomery County on charges of, among other things, possession of PCP with intent to distribute.[22] On October 2, 2012, following a jury trial, Mr. Wilson was found guilty of that offense. Prior to sentencing, the State notified the Circuit Court of Mr. Wilson's status as a repeat offender and advised that it would seek a mandatory minimum term of 25 years incarceration without the possibility of parole, pursuant to the then in-effect sentencing regime. On December 10, 2012, the Circuit Court imposed that sentence.[23]

---

[21] The materials available to us do not indicate the nature of Mr. Wilson's prior conviction. In any event, the precise nature of that conviction does not affect our answers to the certified questions of law.

[22] He was also charged with two counts of driving while impaired by CDS, but the State *nolle prossed* the charges before trial.

[23] Mr. Wilson also pled guilty to another charge of possession with intent to distribute PCP in another case and was sentenced to a 20-year sentence to run concurrently with his sentence in this case.

16

In March 2013, Mr. Wilson filed a timely motion to modify his sentence pursuant to Rule 4-345(e). The Circuit Court denied that motion. Shortly after the JRA provisions concerning mandatory minimum sentences became effective, on October 5, 2017, Mr. Wilson filed another motion to modify or reduce his sentence, this time pursuant to CR §5-609.1.[24] The Circuit Court summarily denied Mr. Wilson's motion without a hearing.

Mr. Wilson filed a timely appeal. He argued that the Circuit Court was required to hold a hearing and determine whether the State had met its burden under CR §5-609.1(b) before it denied his motion. The State contested this legal position on the merits, and both parties submitted arguments on the appealability of the Circuit Court's exercise of discretion in denying the petition.

4.      Certification of Questions of Law Related to these Appeals

As noted, each of these defendants filed a timely notice of appeal to the Court of Special Appeals. However, the State contests the appealability of the rulings in at least two of these cases. Pursuant to Maryland Rule 8-304, the Court of Special Appeals certified four questions of law to this Court related to these appeals. The intermediate appellate court indicated that the disposition of these, as well as other appeals pending and expected to be filed, would likely turn on the answers to these questions and that guidance

---

[24] As part of his motion, Mr. Wilson described circumstances relating to his family and medical history that he said had contributed to his drug abuse problem. He also submitted numerous progress and achievement certificates that he had accumulated during his incarceration.

from this Court was necessary to ensure uniformity of decision in the application of CR §5-609.1.

Pursuant to Maryland Rule 8-304(a) we issued a writ of *certiorari* on our own motion to address the questions certified by the Court of Special Appeals.

## II

## Discussion

The questions of law certified by the Court of Special Appeals, as slightly re-worded, are:

(1) Does CR §5-609.1 authorize a court to modify a mandatory minimum sentence imposed pursuant to a binding plea agreement when the State does not consent to a modification?

(2) Does CR §5-609.1 authorize a court to modify a mandatory minimum sentence imposed pursuant to a binding plea agreement in which the defendant agreed to waive the defendant's right to seek a sentence modification?

(3) Does CR §5-609.1 require a circuit court to conduct a hearing before denying a defendant's request to modify a sentence pursuant to that statute?

(4) Does the Court of Special Appeals have jurisdiction of an appeal from an order denying a defendant's motion to modify a sentence pursuant to CR §5-609.1?

*A.*     ***Whether CR §5-609.1 permits a court to modify a sentence if the defendant was convicted and sentenced pursuant to a binding plea agreement***

As recounted above, both Mr. Brown and Mr. Bottini pled guilty, and were originally sentenced, pursuant to binding plea agreements.[25]  They sought reconsideration of their sentences under CR §5-609.1.  In both cases, the circuit courts declined to consider the merits of their motions, based on the terms of those plea agreements.

The State argues that a court lacks authority to modify a sentence imposed as a result of a binding plea agreement under Rule 4-243(c) without the consent of the State and that the General Assembly did not take away the State's veto in the JRA.

1.     Statutory Text

A defendant serving a sentence that includes a mandatory minimum term must satisfy three criteria to be eligible for consideration for sentence modification under CR §5-609.1:  (1) the mandatory minimum sentence was imposed on or before September 30, 2017; (2) the sentence resulted from a conviction of a drug offense defined in CR §§5-602 through 5-606; and (3) the application must be submitted to the court by September 30, 2018, unless good cause is shown for a later submission.  CR §5-609.1(a), (c).  Just because a defendant is eligible does not mean that the court must exercise its discretion under Rule 4-345(e) to grant a modification.  The statute simply directs the court to consider the factors that normally inform the exercise of the court's discretion in sentencing – the nature of the crime, the defendant's background, and the defendant's prospects for rehabilitation.  CR

---

[25] This issue does not pertain to Mr. Wilson, who was convicted as a result of a trial.

§5-609.1(b). Significantly, the statute sets forth specific grounds on which the State bears the burden of persuasion in opposing a modification in a particular case – that is, maintaining the mandatory minimum sentence would not be unjust to the defendant and is necessary for the protection of the public. *Id.*

Most incarcerated defendants who satisfy the criteria in CR §5-609.1 were convicted as a result of guilty pleas pursuant to plea agreements, many of which were binding plea agreements. *See* Maryland State Commission on Criminal Sentencing Policy, *supra*, at 44 (nearly half of all convictions in fiscal year 2019 resulted from binding plea agreements). No statute or rule precludes a court, as a general matter, from reducing a sentence pursuant to Maryland Rule 4-345 without the State's consent because that sentence was imposed as a result of a guilty plea pursuant to a binding plea agreement. Rather, such a prohibition has been inferred from the requirement in Maryland Rule 4-243(c)(3) that, if a court approves a binding plea agreement, it "shall embody in the judgment the agreed sentence … or *with the consent of the parties*, a disposition more favorable to the defendant than that provided in the agreement." It would appear to defeat the purpose of the binding plea agreement if a court were to agree to be bound by the disposition reached by the State and defendant and then renege on that agreement based on a motion filed within three months of the sentencing. In construing Rule 4-243(c)(3) to embody this prohibition, this Court observed that "[o]ur rules have the force of law." *Chertkov v. State,* 335 Md. 161, 173 (1994) (quoting *Dotson v. State,* 321 Md. 515, 523 (1991)).

20

It is indeed true that rules adopted by this Court, such as Maryland Rule 4-243(c)(3), have the "force of law" at least until "changed or modified . . . otherwise by law." Maryland Constitution, Article IV, §18(a). In other words, a rule may be superseded or qualified by subsequently enacted legislation, as well as by later enacted rules.[26] *See James v. Butler,* 378 Md. 683, 692-93 (2003); D. Friedman, The Maryland State Constitution: A Reference Guide (2006) at 168-69.

The JRA provision concerning mandatory minimum sentences imposed in the past clearly displaces any contrary law, including a court rule – or a prohibition inferred from a court rule. The first sentence of CR §5-609.1 makes that clear: "*[n]otwithstanding any other provision of law . . .* a person who is serving a term of confinement that includes a mandatory minimum sentence imposed on or before September 30, 2017, for a violation of §§5-602 through 5-606 of this subtitle may apply to the court to modify or reduce the mandatory minimum sentence . . . ." (emphasis added). The introductory clause plainly states the General Assembly's intention that this provision of the JRA supersedes pre-existing law that would bar consideration of a sentence modification, such as the State consent requirement derived from Maryland Rule 4-243(c)(3). *See Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 130-32 (2000) (use of the phrase "notwithstanding any other provision of law" clearly and unambiguously indicates that a statute "takes precedence over and prevails" against restrictions imposed by other laws).

---

[26] As a general rule, when there is a conflict between two provisions of law, the later-enacted provision controls. *State v. Ghajari*, 346 Md. 101, 115 (1997); *cf.* Maryland Code, General Provisions Article, §1-207.

The State argues that the "notwithstanding" clause should be read as limited to subsection (a) of CR §5-609.1 and thus to supersede only restrictions on a defendant's ability to "apply" for a modification of a sentence – *i.e.*, file a motion – but not restrictions on a court's authority to take the action authorized under subsection (c) of CR §5-609.1 – *i.e.,* grant the motion. Under this reading, a defendant convicted as a result of a binding plea agreement may file an otherwise untimely motion and then try to persuade the State to consent to the modification. The State suggests that, if the "notwithstanding" clause were intended to apply to the court's decision whether to modify a sentence, it should have been repeated in each of the other subsections of the statute, or the statute should have been tabulated differently.

However, this reading of the statutory language would render the introductory "notwithstanding" clause superfluous as other language in subsection (a) specifically states that "a person . . . may apply to the court to modify or reduce the mandatory minimum sentence as provided in Maryland Rule 4-345, *regardless of whether the defendant filed a timely motion for reconsideration or a motion for reconsideration was denied by the court*" (emphasis added). Moreover, nothing prevented a defendant who received a mandatory minimum sentence in the past from applying for a modification of the mandatory minimum sentence and seeking the State's acquiescence – it was just doomed to failure without the State's consent. The essence of CR §5-609.1 is that it authorizes a *court* to deviate from the mandatory minimum sentence by granting the motion.

2.	Legislative History of CR §5-609.1

The legislative history of CR §5-609.1 reveals that it was one part of sea change in policy related to sentencing of drug offenders and was intended to ensure that a key element of the new approach to sentencing was equally available to offenders already serving sentences.  The statute was the product of two legislative sessions and a study of the effect of mandatory minimum sentences by a special commission created by the General Assembly.

*2015 – The Original CR §5-609.1 – a "Safety Valve" for Future Sentencings*

During its 2015 session, the General Assembly passed legislation aimed at reforming mandatory minimum sentencing for drug-related offenses.  As originally proposed, the bill would have repealed mandatory minimum sentences for repeat drug offenders.  House Bill 121 (2015), first reader.  In addition, it would have entitled a defendant currently serving such a sentence to a hearing before a court, and review by a sentence review panel, to modify or reduce the sentence, and would have authorized the court to reduce the length of the sentence.  *Id.*[27]

The bill was significantly amended as it made its way through the Legislature.  The repeal of the mandatory minimum sentence provisions and the provision mandating hearings for defendants currently serving such sentences were deleted from the bill.  In their place, the amended bill created a more modest provision that related only to future

---

[27] The original version of this legislation was essentially identical to a bill that had been introduced in the General Assembly nearly a decade earlier, but had not become law. *See* House Bill 992 (2007), first reader.

sentencing proceedings and that was referred to as a "safety valve" provision.  That "safety valve," codified as the original version of CR §5-609.1, authorized a court, when imposing a sentence on a repeat drug offender in the future, to depart from mandatory minimum sentences under specified circumstances.  In particular, the statute provided the court with the option of imposing a different lesser sentence if the mandatory minimum sentence would result in "substantial injustice" to the defendant and was not necessary for the protection of the public.  Chapter 490, Laws of Maryland 2015.[28]

Thus, while the 2015 law retained mandatory minimum sentences for repeat drug offenders, it provided a sentencing judge with the option to depart from the mandatory minimum sentence, in light of the circumstances of the particular defendant and other factors.  This "safety valve" applied only prospectively, as it was specifically limited to offenses committed after the bill's effective date of October 1, 2015 and thus did not apply to defendants who were already serving mandatory minimum sentences.  Chapter 490, §§2,

---

[28] The statute provided:

> A court may depart from a mandatory minimum sentence prescribed in §5-607, §5-608, or §5-609 of this subtitle if the court finds and states on the record that, giving due regard to the nature of the crime, the history and character of the defendant, and the defendant's chances of successful rehabilitation:
>
>> (1) imposition of the mandatory minimum sentence would result in substantial injustice to the defendant; and
>>
>> (2) the mandatory minimum sentence is not necessary for the protection of the public.

CR §5-609.1 (2012 Repl. Vol., 2015 Supp.).

4, Laws of Maryland 2015. This law further required that any savings as a result of the expected shorter terms of incarceration would be devoted to funding drug treatment programs. *Id.,* §3; *see generally* Revised Fiscal and Policy Bill for House Bill 121 (May 18, 2015).

*Creation of the Justice Reinvestment Coordinating Council*

During the same legislative session, the General Assembly established the Justice Reinvestment Coordinating Council ("JRCC") as part of the Governor's Office of Crime Control and Prevention. Chapter 42, Laws of Maryland 2015, *codified at* Maryland Code, Public Safety Article, §1-601 *et. seq.* The JRCC was to develop data-driven policies for reducing the State's incarcerated population, reducing recidivism, reducing spending on corrections, and reinvesting the resulting savings in public safety. The JRCC was required to report its findings and recommendations before the end of 2015.[29]

*The JRCC Recommends a Retroactive Safety Valve*

The JRCC issued its final report in December 2015. JRCC Final Report *available at* https://perma.cc/8T42-NES3 ("JRCC Report"). Among other things, the JRCC found that "for many offenders, including drug offenders . . . incarceration can increase recidivism when compared with noncustodial sanctions." JRCC Report, *Executive Summary.* It found that "adding months and years onto prison stays has little or no impact

---

[29] The JRCC was originally scheduled to sunset in 2018. Chapter 42, §2, Laws of Maryland 2015. However, after the JRCC issued its report at the end of 2015, the law creating it was repealed during the 2016 session as part of the JRA, which created other coordinating and oversight bodies and assigned research tasks to other agencies. Chapter 515, §§1, 5, 7-12, 15-17, Laws of Maryland 2016.

on recidivism." *Id*. The report included a package of 19 recommendations, on which the entire JRCC had achieved consensus, that pertained to sentencing, corrections, parole, and mandatory supervision.[30] JRCC Report at 13-23. One of those recommendations was to amend the recently-enacted safety valve in CR §5-609.1. The proposal was to extend the safety valve to defendants currently serving mandatory minimum sentences and shift the burden from the defendant to the State on the question of whether the sentence should be reduced. Specifically, the JRCC recommended that CR §5-609.1 be amended by:

- *Allowing all offenders sentenced to mandatory minimums for drug offenses* [to be] eligible for the safety valve, prior to the 2015 law change, *to apply for resentencing under the safety valve*. Proper motions or applications will need to be filed within one year of the bill's effective date in order to be considered or an offender must show good cause as to why it cannot be filed within the year.

- *Shifting the presumption* in the safety valve retroactively and prospectively *such that the burden is on the state* to argue for the mandatory minimum rather than on the defendant to argue for the safety valve.

*Id.* at 17 (emphasis added). The JRCC also forwarded to the General Assembly three additional recommendations that had significant support from many, although not all, members of the JRCC. One of those recommendations was to completely eliminate mandatory minimum sentences for repeat drug offenders.

---

[30] The report also recommended six categories for reinvesting the savings that were expected to result from the anticipated reduction in spending on incarceration. JRCC Report at 24-27.

26

*2016 – Enactment of New CR §5-609.1 as Retroactive Safety Valve in the JRA*

During the next legislative session in 2016, the recommendations of the JRCC were incorporated in several bills. The consensus recommendations of the JRCC were incorporated in two cross-filed bills. Senate Bill 1005 (2016)/House Bill 1312 (2016). The recommendations that did not have the endorsement of the entire JRCC, such as the complete elimination of mandatory minimum sentencing provisions for repeat drug offenders, were incorporated in two other cross-filed bills. Senate Bill 1006 (2016)/House Bill 1313 (2016). As is often the case with legislation, the bill that ultimately passed was an amalgam of those bills embodied in an amended version of Senate Bill 1005.

As introduced, Senate Bill 1005 (and House Bill 1312) would have retained the safety valve sentencing provision in CR §5-609.1 and amended it in the two ways proposed by the JRCC – extending this sentencing relief to individuals already serving mandatory minimum sentences and shifting the burden to the State to show that maintaining a mandatory minimum sentence in a particular case was in the public interest. *See* Senate Bill 1005 (2016), first reader. At a hearing before the House Judiciary Committee on the House bill, the Executive Director of the Governor's Office of Crime and Prevention, who also served as chairman of the JRCC, testified that the retroactive application of the safety valve to currently incarcerated defendants was intended to allow a court to "use the same

27

rubric" to assess appropriateness of a mandatory minimum sentence for past sentences as the 2015 legislation had provided for future sentencing decisions.[31]

The other set of cross-filed bills provided for the repeal of the mandatory minimum sentences for certain repeat drug offenders. Senate Bill 1006 (2016)/House Bill 1313 (2016). Although neither of those bills passed, the conference committee amendments for Senate Bill 1005 adopted by both houses incorporated the proposed repeal. The prospective repeal of mandatory minimum sentences rendered the existing safety valve provision for future sentencings of repeat drug offenders (then codified as CR §5-609.1 from the 2015 legislation) unnecessary. It was repealed as part of the conference committee amendments, but the idea of applying that "rubric" to those defendants currently serving mandatory minimum sentences was retained. It was codified in a new version of CR §5-609.1 that became effective October 1, 2017. Chapter 515, §§2, 18, Laws of Maryland 2016.[32]

---

[31] House Judiciary Committee Hearing on HB 1312 (March 4, 2016) 24:42-28:00 *available at* http://mgahouse.maryland.gov/mga/play/5079affa-1f19-4fec-b4c4-e154db6f838a/?catalog/03e481c7-8a42-4438-a7da. 93ff74bdaa4c&playfrom=7000.

[32] Other provisions of the JRA reduced the maximum penalties for certain drug offenses, altered criminal provisions relating to crack cocaine prosecutions, created a process for a drug treatment assessment of defendants convicted of marijuana offenses, and established a system of graduated sanctions for technical violations of probation, among other things. Recent opinions of this Court have construed provisions of the JRA concerning technical violations of probation. *See State v. Alexander*, 467 Md. 600 (2020); *Conaway v. State*, 464 Md. 505 (2019).

3.    Analysis

The "notwithstanding" clause in the text of CR §5-609.1 indicates, although somewhat ambiguously, that the retroactive safety valve provision supersedes other law, including the law that enforces provisions of binding plea agreements made prior to the JRA that resulted in mandatory minimum sentences. The legislative history of the JRA appears to confirm this interpretation, as the retroactive safety valve provision originated from a JRCC recommendation that the law be amended to allow "*all offenders sentenced to mandatory minimums for drug offenses* . . . to apply for resentencing under the safety valve." (emphasis added). JRCC Report at 17. This is consistent with the JRA's design to revise drug offense sentences to reduce the period of incarceration when a lengthy sentence was unlikely to discourage and indeed likely to aggravate recidivism, to "[f]ocus prison beds on serious and violent offenders," and to redirect the funds saved to address treatment of offenders. It was no secret to the Legislature that the vast majority of defendants serving sentences were convicted as a result of plea agreements – in many instances, binding plea agreements. There is no indication in the text of the statute that the General Assembly intended to exclude such a significant percentage of the defendants serving mandatory minimum sentences from the purview of CR §5-609.1. Nor is there anything in the legislative history that suggests different treatment for defendants who had entered into binding plea agreements.

The State raises objections to this interpretation based on constitutional law and contract law. It contends that a modification of a sentence that resulted from a binding plea agreement without the prosecution's consent would be at odds with the separation of

29

powers,[33] as well as the discretion accorded State's Attorneys,[34] in the Maryland Constitution. It further argues that application of CR §5-609.1 to defendants serving mandatory minimum sentences based on binding plea agreements would be a breach of those plea agreements that releases the State from its obligations under those agreements and, by depriving the prosecution of one of the benefits of its bargain, will disincentivize prosecutors from entering into agreements in the future.

To be sure, prosecutors have broad prosecutorial discretion in choosing whom to prosecute, what charges to bring, and, upon conviction of a defendant, what penalties to seek from among those that the law allows. *Oglesby v. State*, 441 Md. 673, 680 (2015). Much of that discretion is exercised in the context of plea bargaining. But it is the Legislature that makes the general policy decisions of the criminal law – defining criminal offenses in statute, setting maximum and (in some cases) minimum penalties, creating mechanisms for defendants to earn release from custody or expungement of charges or convictions. A State's Attorney exercises prosecutorial discretion subject to the policy decisions made by the Legislature.[35] And it is the function of the court to decide on a sentence within the range set by the Legislature as appropriate to the particular defendant.

---

[33] Maryland Declaration of Rights, Article 8.

[34] Maryland Constitution, Article V, §§7-11.

[35] *See* Maryland Constitution, Article V, §9 ("The State's Attorney shall perform such duties . . . as shall be prescribed by the General Assembly.").

When a court approves a binding plea agreement with a specific sentence, it is not delegating the responsibility of sentencing to the prosecution. Rather, it makes a judgment that the agreed-upon sentence will be an appropriate exercise of the court's discretion in that case, in light of the court's sentencing options and the General Assembly's policy decisions. When the General Assembly makes a policy decision that allows an imprisoned defendant an opportunity to seek an earlier release from custody, the court retains its sentencing discretion under the statute. It does not matter whether an individual prosecutor might have brought additional charges or asked for a different disposition if the prosecutor had foreseen the future change in legislative policy. The prosecutor does not have a vested right in a sentencing range previously set in statute or, indeed, in a particular outcome in any individual case.[36] Indeed, as a well-known aphorism goes, the government wins when justice is done.[37]

As to the application of contract principles, it is certainly true that ordinarily a sentencing court may not deviate from the agreed-upon sentence, either upwards or

---

[36] *See, e.g.*, *State v. Smith*, 443 Md. 572, 594 (2015) (State did not have vested right that was violated by statutory amendment that provided defendant with right to file writ of coram nobis).

[37] A version of this saying is inscribed in the rotunda of the United States Department of Justice and attributed to Frederick W. Lehmann, who served as Solicitor General more than a century ago. Somewhat more recently, another version appeared in a Supreme Court opinion. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

downwards, once it has approved the plea agreement, without the State's consent. As previously outlined, that principle is the product of a rule, rather than simply a matter of contract enforcement. Such a departure from the sentence specified in the binding plea agreement violates Rule 4-243(c) and is an illegal sentence. *Smith v. State*, 453 Md. 561, 574-77 (2017); *Bonilla v. State*, 443 Md. 1, 15 (2015). However, CR §5-609.1 trumps Rule 4-243. A court acts lawfully when it modifies a mandatory minimum sentence by implementing a statute subsequently enacted by the General Assembly, notwithstanding whether the prosecution consents to that modification. While contract principles may be useful in interpreting and implementing plea agreements, the widespread practice of plea bargaining does not make criminal sentencing policy a subset of contract law. *See Ray v. State*, 454 Md. 563, 576 (2017) (in light of concerns for fairness and procedural safeguards in the criminal law context, "exclusive application of contract law is inappropriate"). A modification of a mandatory minimum sentence under CR §5-609.1 is not a basis for releasing the State from its obligations under a plea agreement.

We note that, subsequent to the JRA, a similar retroactive safety valve provision was enacted in federal criminal law, and it appears that a binding plea agreement is not regarded as an impediment to a reduction in sentence under that law. In particular, in the Fair Sentencing Act of 2010,[38] Congress provided for more lenient sentences for certain categories of drug offenders. A few years later, it allowed for the retroactive application

___

[38] Pub. L. No. 111-220, 124 Stat. 2372 (2010).

of that legislation in the First Step Act of 2018[39] by authorizing a court, upon motion, to reduce a sentence previously imposed, as if the Fair Sentencing Act had been in effect at the time of the offense. First Step Act, §404; *see generally* N.W. Reisinger, *Redrawing the Line: Retroactive Sentence Reductions, Mass Incarceration, and the Battle Between Justice and Finality*, 54 Harv. C.R.-C.L. L.Rev. 299 (2019). Several recent federal court decisions have noted that the fact that the original sentence was the result of a binding plea agreement[40] does not preclude relief under the First Step Act. *See United States v. Wilson,* 2020 WL 4504697 (M.D. Ala. 2020) at *3-4 (holding that binding plea agreement did not prevent resentencing under First Step Act); *United States v. Higgins*, 2019 WL 2527562 (E.D. Tenn. 2019) at *2 & n.3 (denying sentence reduction, but noting that government conceded that First Step Act applied to defendant and that binding plea agreement was not a basis for denial); *United States v. Johnson*, 2019 WL 3938472 (N.D. Iowa 2019) at *3 (noting that government agreed that defendant, who had pled guilty and was sentenced under binding plea agreement, was eligible for relief under First Step Act); *United States v. Johnson*, 2019 WL 1186857 (W.D. Va. 2019) at *2-3 (granting sentence reduction and rejecting government argument that both parties had already received "the benefit of their bargain" under binding plea agreement).

---

[39] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[40] Federal Rule of Criminal Procedure 11(c)(1)(C) provides for binding plea agreements similar to Maryland Rule 4-243(c).

The federal courts considering the application of a retroactive safety valve provision have drawn an analogy to the situation in *Hughes v. United States*, 138 S.Ct. 1765 (2018). In *Hughes*, the defendant, who had been indicted on gun and drug charges, had entered into a binding plea agreement that included a specific period of incarceration. The federal district court approved the plea agreement after determining that the agreed-upon period of incarceration was consistent with the federal sentencing guidelines. A statute allowed for the sentencing commission to indicate whether revised guidelines should have retroactive effect and, in such a case, authorized district courts to reduce sentences. The federal sentencing guidelines relating to the defendant's offense were revised downward, with retroactive effect, and the defendant then sought a reduction of his sentence. The Supreme Court held that the binding plea agreement did not preclude the district court from reducing the sentence. 138 S.Ct. at 1777 (in that context, "there is no reason a defendant's eligibility for relief should turn on the form of his plea agreement").[41]

None of this is to say that, in exercising its discretion under CR §5-609.1, a circuit court may not consider the terms of the binding plea agreement, what prompted the State and defendant to enter into that agreement involving a mandatory minimum sentence in the particular case, or what considerations caused the court to approve it in the circumstances

---

[41] In *Koons v. United States*, 138 S.Ct. 1783 (2018), the Supreme Court distinguished a case in which a congressionally-mandated mandatory minimum sentence effectively established the relevant sentencing guideline and concluded that a defendant in such a case did not qualify for a sentencing reduction. Unlike the cases before us, the federal statutes creating mandatory minimum sentences had not repealed. Nor did that case concern the effect of a binding plea agreement on a provision for retroactive adjustment of a sentence.

of that case. A court is not precluded by a binding plea agreement from granting a motion under CR §5-609.1 to modify a mandatory minimum sentence, but neither is the court bound to grant that motion. *See* CR §5-609.1(b) (court to evaluate whether "retention of the mandatory minimum sentence would not result in substantial injustice to the defendant").

**B.** *Whether CR §5-609.1 permits a court to modify a sentence if the defendant waived the right to seek modification of sentence in a binding plea agreement*

Mr. Bottini's plea agreement contained a provision waiving the right to seek reconsideration of his sentence.[42] The Circuit Court summarily denied Mr. Bottini's motion under CR §5-609.1, referring to that provision of the plea agreement in its order.

In our view, the answer to this question follows inexorably from the answer to the previous question. As recounted above, when a defendant is convicted as a result of guilty plea pursuant to a binding plea agreement that specifies the sentence, a court is ordinarily precluded as a matter of law from reducing that sentence in response to a motion for

---

[42] In addition to a motion for reconsideration of sentence, presumably referring to a motion under Maryland Rule 4-345(e), the waiver provision of Mr. Bottini's plea agreement also encompassed two other procedural mechanisms (a sentence review panel and a remedy under the Health-General Article). The waiver provision did not, of course, refer to CR §5-609.1 as the plea agreement, guilty plea, and sentencing in Mr. Bottini's case all preceded the enactment of that statute by several years. Apart from the answer given in the text to the certified question of law, there is a reasonable argument, at least in Mr. Bottini's case, that his plea agreement did not encompass future remedies such as that provided by CR §5-609.1.

Mr. Brown's plea agreement apparently did not contain such a provision. As indicated earlier, Mr. Wilson's conviction resulted from a trial, not a guilty plea pursuant to a plea agreement.

modification under Maryland Rule 4-345(e). An explicit waiver of the right to seek a modification of the sentence in the plea agreement recognizes that result, but in the end adds nothing to it.[43] In the previous section of this opinion, we concluded that a binding plea agreement did not bar modification of a sentence pursuant to CR §5-609.1. Accordingly, a waiver provision in a binding plea agreement does not preclude a defendant from seeking, or a court from granting, a modification of a mandatory minimum sentence pursuant to CR §5-609.1.

Again, recent federal case law under the First Step Act involving agreements with similar waivers is informative. Those courts have held that defendants who entered into agreements waiving the right to file post-conviction motions were not precluded from seeking a sentence modification under the retroactive provision of the First Step Act. *See United States v. Ellerby*, 2020 WL 2395619 (D. Md. 2020) at \*2-3 (defendant who waived right to file additional post-conviction motions under a post-conviction agreement with government that specified an agreed-upon sentence was not precluded from seeking sentence reduction under First Step Act); *United States v. Johnson*, 2019 WL 3938472 (N.D. Iowa 2019) at \*10 (appeal waiver in plea agreement did not preclude defendant's motion under First Step Act); *see also United States v. Burrill*, 2020 WL 1846788 (N.D.

---

[43] When the binding plea agreement simply caps the term of imprisonment to be imposed, or allows for a range, such a waiver may have some additional effect. However, once the court imposed a sentence in accordance with such a plea agreement, that sentence, combined with the waiver, would be indistinguishable from a situation in which the binding plea agreement specified the term of imprisonment.

Cal. 2020) at *2 (waiver in plea agreement of statutory right to seek modification of sentence did not preclude relief under First Step Act).

*C.*      ***Whether a defendant is entitled to a hearing on a motion for modification of sentence pursuant to CR §5-609.1***

In the appeals that are the bases for the questions of law certified to us by the Court of Special Appeals, one of the Appellants, Mr. Brown, received a hearing on his motion under CR §5-609.1 in the Circuit Court. The motions of Mr. Bottini and Mr. Wilson were both denied by order without a hearing.

CR §5-609.1 does not explicitly require a court to hold a hearing, although it refers to the possibility of a hearing. Subsection (a) of the statute states that a defendant may "apply to the court to modify or reduce" a mandatory minimum sentence, but says nothing about a hearing on that application. However, in cross-referencing subsection (a), subsection (c) of the statute makes three references to a hearing – or more precisely, to a request or application for a hearing: "an application for a hearing under subsection (a) shall be submitted to the court [before a specified date]," the court is to notify the State's Attorney of "a request for a hearing," and the defendant is permitted to file only one "application for a hearing." CR §5-609.1(c)(1), (3), (4). Of course, even if subsection (a) had directly stated, as subsection (c) implies, that a defendant "may apply for a hearing" or "may request a hearing," that would not mean that the defendant would be *entitled* to a hearing. An "application" can be turned down; a "request" can be denied. A hearing is not inevitable.

37

It is a simple matter to include a hearing requirement in a statute by inserting a provision that states "the court shall hold a hearing." The General Assembly does so with some frequency, especially in connection with criminal cases. *See, e.g.*, CJ §10-901, (requiring hearing on admissibility of certain evidence in a criminal case); CJ §10-923 (same); CP §3-106 (competency hearing); CP §3-117 (hearing on commitment to mental health facility); CP §4-202.1 (transfer hearing regarding detained child); CP §6-226 (hearing on failure to pay probation fee); CP §6-230 (hearing on modifying sentence to probation before judgment in certain cases); CP §8-201 (hearing on state's proposal to dispose of evidence); CP §8-301 (hearing on petition for writ of actual innocence if pleading requirement is satisfied); CP §8-302 (motion to vacate conviction of prostitution); CP §§10-103, 10-105, 10-110 (hearings on requests for expungement); CP §10-303 (hearing on shielding of court and police records); CP §11-111 (hearing on emergency order for HIV testing); CP §§12-308, 13-521 (hearing on forfeiture claims); *cf. Jackson v. State*, 358 Md. 612, 622 (2000) (alluding to the "clear and direct" section in Maryland Rule 4-331 requiring a hearing on a motion for new trial).

It is also notable that subsection (a) of CR §5-609.1 states that it is creating an opportunity to seek reduction or modification of sentence "as provided in Maryland Rule 4-345." Although a hearing must be held under that rule before the court *grants* a motion, there is no absolute requirement for a hearing in Rule 4-345 – *i.e.,* the court may deny a motion under that rule to modify a sentence without holding a hearing. *See* Maryland Rule

38

4-345(e)(2)(B), (f).[44]  Subsection (c) of CR §5-609.1 also refers to the possibility of an application for modification being submitted to a sentence "review panel."  Sentence review panels are not required to hold a hearing on every application.  *See* CP §8-105(c)(3); Maryland Rule 4-344.  In the absence of an explicit hearing requirement in either CR §5-609.1 or the rule it incorporates, we cannot read one into the text of the statute.

The parties have not directed us to anything in the legislative history of the statute that addresses the question of whether the General Assembly contemplated that a hearing would always be held on a motion to modify or reduce a sentence.[45]  Nor have we found anything definitive.

---

[44] Rule 4-345(f) explicitly requires a court, before it modifies, reduces, corrects, or vacates a sentence, to hold a hearing in open court at which the defendant, the State, and any victim (or the victim's representative) may be heard.  The rule indirectly acknowledges that a motion to modify a sentence may be denied without a hearing, in that the rule requires the State's Attorney to notify each victim and victim's representative of a denial of a motion without a hearing.  Maryland Rule 4-345(e)(2)(B).

[45] Appellants refer to certain statements made by some members of the JRCC at legislative hearings in 2018, two years *after* the JRA was enacted, during consideration of a bill that would have *added* a hearing requirement to CR §5-609.1.  *See* House Bill 1082 (2018).  That provision was characterized in testimony on the bill as a "technical fix" to the JRA.  That bill did not pass.  Of course, an argument could be made that the failure of that bill signifies that the General Assembly affirmatively did *not* intend to require a hearing on all motions under CR §5-609.1.  In any event, it has often been said that the failure of a bill is a "weak reed" on which to base conclusions one way or the other as to legislative intent.  *E.g., Baltimore Development Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 329 (2006).  Moreover, after-the-fact statements – even those of legislators and even as to the purpose or meaning of legislation that *did* pass – are discounted.  *Building Materials Corp. v. Board of Education*, 428 Md. 572, 592 (2012).  In general, "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation" and "by definition 'could have had no effect on the [legislature's] vote.'"  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

The precursor of the JRA, introduced in the General Assembly in 2015, would have explicitly given a defendant serving a mandatory minimum sentence an entitlement to a court hearing, as well as to a sentence review by a sentence review panel. House Bill 121 (2015), first reader.[46] That provision was deleted from the 2015 legislation and was not resurrected in the JRA in 2016.[47]

In its recommendation for retroactive relief for mandatory minimum sentences imposed in the past, the JRCC suggested that the existing CR §5-609.1, which concerned the future sentencing of repeat drug offenders, be amended to allow for "resentencing" of offenders previously convicted and sentenced. Under Maryland Rule 4-342, a sentencing, and presumably a "resentencing," necessarily involves a hearing, as the defendant is to be given the opportunity "personally and through counsel" to address the court, as is a victim. Maryland Rule 3-342(d), (e). However, as outlined above, the new CR §5-609.1, as enacted by the JRA, clearly relates the relief offered by that statute to a motion for modification under Rule 4-345, not a sentencing under Rule 4-342. We do not have authority to retroactively redraft the legislation that actually was enacted.

Despite the fact that CR §5-609.1 does not mandate a hearing in all cases, a court called upon to decide a motion under CR §5-609.1 should ordinarily hold a hearing to ensure that it is exercising its discretion in accordance with the criteria in that statute. A

---

[46] This was identical to a hearing provision that appeared in the 2007 bill that presaged the 2015 legislation. *See* footnote 27 above.

[47] *See* Part II.A.2 of this opinion above.

motion under CR §5-609.1 will often pertain to a sentence imposed years ago, perhaps by a different judge. In deciding the motion, the court must conduct an individualized assessment of the defendant – which may not have been done at the original sentencing in light of the mandatory minimum sentence the court was required to impose. The court must consider not only the nature of the crime, but the "history and character" of the defendant, the defendant's current prospects for rehabilitation, and whether a mandatory minimum sentence is now a just one as to both the defendant and the public. The court must decide whether to modify the sentence and, if so, how. It must assess whether the State's showing with respect to the statutory factors precludes any modification. A cold record of a past conviction is unlikely to give the necessary insight into the factors to be considered and the decisions to be made.

This situation is analogous to that in *Arey v. State*, 400 Md. 491 (2007). That case concerned CP §8-201, which is designed to allow a defendant convicted of certain crimes to obtain exculpatory or mitigating evidence through DNA testing of items related to the conviction, upon making the showing required by the statute.[48] In *Arey,* the defendant requested DNA testing under CP §8-201 of evidence that had been introduced at his trial 30 years earlier. The State filed an affidavit stating that the evidence no longer existed and the circuit court dismissed the petition without a hearing. Among the several issues on appeal was whether the defendant was entitled to a hearing. The statute did not provide an express right to a hearing and the Court concluded that there was no constitutional right to

---

[48] *See Simms v. State*, 445 Md. 163, 167-69 (2015).

a hearing in that case.[49]  Nevertheless, this Court observed that "given the purpose underlying the statute . . . and notwithstanding that §8-201 is silent on the issue of hearings, if the court determines that there is a *genuine* factual issue as to whether the evidence exists, ordinarily the court should hold a hearing."  400 Md. at 507; *see also Douglas v. State,* 423 Md. 156, 177-82 (2011) (discussing hearing requirement in CP §8-301 concerning petition for writ of actual innocence).

Even when there is not a specific factual dispute that would require an evidentiary hearing, a hearing can be important to the proper exercise of the court's discretion.  As this Court has noted in another context, "personal, vocal communication with the judge may not only itself be a more effective means of persuasion than written documents that may be read hurriedly and not fully appreciated or understood[.] . . . [A] hearing offers at least a limited opportunity for dialogue, allowing for clarification, for greater precision, for addressing concerns harbored and expressed by the judge." *Jackson v. State*, 358 Md. 612, 625 (2000).

It would be within the rulemaking authority of this Court to require a hearing on every motion brought under CR §5-609.1.  But this is not an occasion for the exercise of that authority.  Here, our task is to determine the requirements of CR §5-609.1, as it was enacted by the Legislature and to discern the policy judgments made by that body.

---

[49] After the *Arey* decision, the General Assembly added a provision to the DNA testing statute requiring a circuit court to hold a hearing in specified circumstances. Chapter 337, Laws of Maryland 2008.

In our view, the Legislature did not require that a circuit court hold a hearing in every case in which a defendant files a motion under CR §5-609.1. However, consistent with Maryland Rule 4-345, the court must hold a hearing before it grants such a motion. And the court should ordinarily hold a hearing when there is a material factual dispute related to the factors that CR §5-609.1 directs the court to consider or when a hearing will otherwise assist the court in its consideration of the factors set forth in the statute.

### D. *Whether denial of a motion for modification under CR §5-609.1 is appealable*

The State has challenged the appealability of the orders denying the motions to modify sentence in the cases of Mr. Bottini and Mr. Wilson. As indicated above, it is not entirely clear, from the materials before us, whether the State is contesting the appealability of the denial of Mr. Brown's motion.

CR §5-609.1 does not include any provision specifically authorizing or foreclosing an appeal of a denial of a motion for modification.[50] As noted above, this statute essentially extends the opportunity for a defendant to seek, and a court to consider, modification of a sentence under Maryland Rule 4-345 to circumstances in which such a motion was not previously available. It also shifts the burden of persuasion to the State on certain criteria, explicitly articulated in the statute, that the court is to consider in exercising its discretion to grant or deny such a motion. In effect, the statute adds another section or category to Rule 4-345 concerning a circuit court's revisory power over a sentence. As was the case

---

[50] The parties have not directed us to anything specifically addressing appellate jurisdiction in the legislative history of the JRA and, as best we can tell, it is silent on the issue.

43

with the hearing issue addressed in the previous section of this opinion, the answer to the question on appealability of an order under CR §5-609.1 must be assessed with respect to the existing law under Rule 4-345(e) and how the peculiar provisions of this statute affect appealability.

In suggesting an answer to this question, the Appellants swing for the fences, asking us to revisit the Court's prior case law on the appealability of denials of motions under Maryland Rule 4-345(e). They ask us to revise significantly this Court's past analysis of the appealability of such orders and hold that a denial of a motion for modification of a sentence under that rule is generally appealable as a final judgment.[51]

The State stakes out a position at the opposite extreme, arguing that the Uniform Postconviction Procedure Act ("UPPA"), CP §7-101 *et seq.*, forecloses an appeal of *any* order denying a motion to modify sentence under Maryland Rule 4-345(e).[52] Such a holding would have this Court reverse course from its existing interpretation of the UPPA.[53]

---

[51] They have also presented two fallback positions: (1) that denial of a motion for modification of sentence should be appealable if the circuit court decision was tainted by legal error or clearly erroneous fact findings; and (2) that the order is appealable if the sentencing court asserts that it lacks authority to modify the sentence.

[52] Later in its brief, the State concedes that a denial of a motion to modify sentence is appealable if that decision is not the result of the exercise of the court's discretion, but rather the court's erroneous belief that it lacked authority to grant the motion.

[53] The State relies on a provision of the UPPA that, subject to two narrow exceptions, precludes appeals in cases in which "a person challenges the validity of confinement under a sentence of imprisonment by seeking the writ of habeas corpus or the writ of coram nobis or by invoking a *common law or statutory remedy,*" other than the UPPA. CP §7-107 (emphasis added). However, this Court has held that this appeal-

44

A decision to either effect would extend well beyond motions to modify sentence brought under CR §5-609.1 and would have consequences for most, if not all, criminal convictions. There may be merit in revisiting the general issue of the appealability of orders denying motions brought under Rule 4-345(e). But we decline to do so in this case and, standing by things already decided (*i.e.*, *stare decisis*), shall apply the existing case law on appealability under Rule 4-345 to an order denying a motion under that rule.

The existing law on appealability of a denial of a motion under Maryland Rule 4-345(e) was most recently stated in *Hoile v. State*, 404 Md. 591, 611-19 (2008), which undertook a careful and detailed excavation of the Court's prior case law on appealability generally and with respect to motions to modify sentences in particular. As articulated in *Hoile*, the result is an uneasy compromise between the claims of finality and the felt need for fair review.

The analysis starts from the trail head for any analysis of a right to appeal. As it is often said that "appellate jurisdiction is entirely statutory,"[54] one must begin with a statute and, in the absence of a special statutory provision – our situation here – the usual starting place is CJ §12-301, which grants a right to appeal from a "final judgment." Because the

stripping provision of the UPPA applies only to motions "specifically or exclusively designed to challenge the 'validity' of incarceration." *State v. Kanaras*, 357 Md. 170, 184 (1999). A motion under Maryland Rule 4-345(e) that seeks a modification or reduction of an admittedly valid sentence is not subject to the strictures of the UPPA. *See Douglas v. State*, 423 Md. 156, 174-77 (2011) (only post-conviction remedies that are "beyond those that are incident to the usual procedures of trial and review" are subject to UPPA's appeal-stripping provision).

[54] *See State v. Brookman*, 460 Md. 291, 310 (2018).

statutory definition of the phrase "final judgment" is somewhat circular – "a judgment …

from which an appeal … may be taken"[55] – it has fallen to this Court to elaborate on that

definition in various contexts. The Court has adopted this formulation:

> A final judgment is one that either determines and concludes the rights of the parties involved or denies a party the means to prosecute or defend his or her rights and interests in the subject matter of the proceeding.

*Douglas v. State*, 423 Md. 156, 171 (2011) (citations, quotation marks, and other editing

marks omitted); *see also State v. Brookman*, 460 Md. 291, 311 (2018) (final judgment is

one that "puts a party out of court").

The appeal in *Hoile* had followed an unusual and convoluted procedural path. We

will mention only the basics. The defendant pled guilty to assault and originally received

a 15-year sentence, suspended in favor of five years' probation. 464 Md. at 597. He

subsequently violated that probation and was ordered to serve the sentence of

imprisonment. He filed a motion for reconsideration under Maryland Rule 4-345(e). The

circuit court granted that motion and reduced the sentence to time served to be followed by

five years' probation. However, when it later appeared that the victim in the case had not

received the required notice of that motion and was opposed to the sentence reduction, the

circuit court vacated the new sentence and reinstated the prior sentence of imprisonment.

The defendant appealed that decision. A threshold issue in that appeal was whether there

was appellate jurisdiction.

---

[55] CJ §12-101(f).

To decide the question of appealability in *Hoile*, this Court began from the premise – stated in several prior cases[56] – that there is a final judgment for purposes of appeal in a criminal case when the sentence is announced or imposed. 404 Md. at 611-12. The Court also noted that the *grant* of a motion for modification of sentence under Maryland Rule 4-345(e) results in the imposition of a new sentence[57] and thus a new final judgment for purposes of appellate jurisdiction. *Id*. at 613-15.

It would seem to follow that the denial of a motion to modify a sentence does not result in the imposition of a new sentence and thus would not qualify as a final judgment that is appealable. In effect, the vacation of the sentence reduction in *Hoile* left the defendant in just that place. Indeed, the State argued that the circuit court's about-face simply resurrected the prior sentence, with the same effect as if the defendant's motion for reconsideration had been denied, meaning that there was no final judgment and no appellate jurisdiction.

However, the matter was not that simple. The Court took a deep dive into past case law on appealability of orders denying motions to modify a sentence. The Court noted that there is "much case law holding that the denial of a motion to modify a sentence, unless tainted by illegality, fraud, or duress, is not appealable." 404 Md. at 615. The Court also observed that prior cases holding that denial of a motion to modify sentence is not appealable relied on the notion "that a decision left to the discretion of the trial court judge

---

[56] *E.g., State v. Sayre*, 314 Md. 559, 565 (1989).

[57] *E.g., Greco v. State*, 347 Md. 423, 432 (1997).

47

is not reviewable on appeal" except when a court fails to exercise that discretion – a rationale that had been subsequently disclaimed in another context.[58]  *Id*. at 616-17. Seemingly tacking in the opposite direction, dicta in a decision issued a year earlier had alluded to "the possibility that the denial of a motion for modification may be appealable under the final judgment rule." *Fuller v. State*, 397 Md. 372, 388 (2007).  The Court in *Hoile* rejected what it described as the "undeveloped dicta" in *Fuller* in favor of "the clearly articulated earlier rule prohibiting appeal of a discretionary denial of a timely motion" under Rule 4-345(e).  404 Md. at 617.

The Court in *Hoile* noted that the defendant still had a pending motion for modification of sentence before the circuit court, but that a future denial of that motion would not be appealable.  In a footnote, it expressed the view that, in the peculiar circumstances of the case before it, it would be "contrary to the interests of justice" to preclude the defendant from any appellate review and "unfair to hold that the [defendant] must wait for the trial court to rule on his pending motion for modification of sentence, only to have denial of that motion be unappealable."  404 Md. at 616 n.23.  The Court concluded that, although a denial of the defendant's motion to modify his sentence would not be appealable, the order that vacated the grant of the motion and reinstated his prior sentence qualified as a "new sentence" that triggered a right of appeal.  *Id.* at 618-19.  The Court also reasoned that, for purposes of appealability, there was a distinction to be made

---

[58] *Merritt v. State*, 367 Md. 17 (2001) (rejecting theory that trial court's ruling on new trial motion was unreviewable because it involved exercise of trial court discretion).

48

between "motions to correct a sentence based upon an error of law and motions to reconsider sentence that are entirely committed to a court's discretion." *Id*. at 617-18. The Court then went on to decide that the circuit court's new sentence amounted to an illegal increase in sentence because the court lacked authority to do so based on a violation of the victim's rights. *Id*. at 619-29.

A motion under CR §5-609.1 is similar to a motion to modify under Maryland Rule 4-345(e), but is unique in certain key respects. Like a motion under Rule 4-345(e) to reconsider a sentence, the decision on a motion to modify a mandatory minimum sentence pursuant to CR §5-609.1 is committed to the discretion of the circuit court. However, unlike a motion under Rule 4-345(e), the State bears the burden of persuasion under CR §5-609.1 in the circuit court that modification of the sentence is inappropriate in the particular case. The retroactive application of the safety valve provision in the JRA is an extraordinary opportunity for defendants serving mandatory minimum sentences to be afforded something that the statute previously did not allow for these defendants – individualized sentencing based on the circumstances of each case, just as a sentencing judge would have conducted in the absence of a mandatory minimum sentencing regime. Even should a motion be denied and the term of incarceration remain the same, a *new sentence has been imposed* – as the sentence is now an *individualized* sentence, the result of a sentencing judge's assessment that the term of incarceration meets the seriousness of the crime, and not merely the demand of a statutory mandate. Like the proceeding in the circuit court in *Hoile* in which the modified sentence was vacated, the decision on a motion

49

to modify a mandatory minimum sentence pursuant to CR §5-609.1 is akin to a re-sentencing – as the JRCC Report contemplated and characterized it.

Thus, in our view, there is appellate jurisdiction of an appeal of a denial of a motion to modify a sentence pursuant to CR §5-609.1. It remains important to keep separate the question of appellate jurisdiction and the standard of appellate review. Appellate jurisdiction is binary – like a switch that is either on or off, 1 or 0 – digital in nature. The standard of appellate review is analog in nature – it can vary from a standard extremely deferential to the decision making of the circuit court, such as review for abuse of discretion, to a standard that defers not at all, such as *de novo* review.

CR §5-609.1 expressly states that a "court *may* modify the sentence and depart from the mandatory minimum sentence." (emphasis added). It is a decision committed to the discretion of the circuit court and, accordingly, to be reviewed under the deferential abuse-of-discretion standard. Such a standard generally applies in the review of a sentencing decision because of the broad discretion that a court usually has in fashioning an appropriate sentence. *See Sharp v. State*, 446 Md. 669, 687 (2016). As has frequently been repeated, an abuse of discretion occurs "when the court acts without reference to any guiding rules or principles," "where no reasonable person would take the view adopted by the court," or where the "ruling is clearly against the logic and effect of facts and inferences before the court." *Alexis v. State*, 437 Md. 457, 478 (2014). Failure of a court to recognize or exercise its discretion "for whatever reason – is by definition not a proper exercise of discretion." *State v. Alexander*, 467 Md. 600, 620 (2020).

# III

## Conclusion

For the reasons explained above, we answer the certified questions as follows:

(1) Under CR §5-609.1, a court may modify a mandatory minimum sentence imposed prior to the effective date of the JRA following a guilty plea pursuant to a binding plea agreement, even if the State does not consent to the modification. The decision whether to modify a mandatory minimum sentence is a matter within the sentencing court's discretion, upon consideration of the factors in CR §5-609.1(b).

(2) Under CR §5-609.1, a court may modify a mandatory minimum sentence, even if that sentence was imposed prior to the effective date of the JRA following a guilty plea pursuant to binding a plea agreement in which the defendant waived the right to seek modification of the sentence. The decision whether to modify a mandatory minimum sentence is a matter within the sentencing court's discretion, upon consideration of the factors in CR §5-609.1(b).

(3) In considering the factors set forth in CR 5-609.1(b) and exercising its discretion to decide whether to modify a mandatory minimum sentence pursuant to that statute, a court should, in most circumstances, conduct a hearing to receive evidence when such evidence will aid the exercise of the court's discretion and to hear argument from the parties concerning the application of the factors in CR §5-609.1(b). Under Maryland Rule 4-345, the court must hold a hearing before it grants a motion. There is no absolute requirement in the statute or rule to hold a hearing when the court denies a motion.

(4)  An appellate court has jurisdiction of an appeal of an order denying a motion under CR §5-609.1 because that statute shifts the burden of persuasion to the State with the result that a decision on that motion is similar to a re-sentencing that results in a final judgment.  The decision on such a motion is committed to the discretion of the circuit court and the standard of review is abuse of discretion, which may include a legal error, such as the circuit court failing to recognize or exercise its discretion.

We express no view on whether any of the defendants in the predicate cases to these certified questions should receive a modification of his mandatory minimum sentence.

**CERTIFIED QUESTIONS ANSWERED.  CASES REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES (ONE-SIXTH TO BE PAID BY EACH APPELLANT, ONE-THIRD BY MONTGOMERY COUNTY AND ONE-SIXTH BY CHARLES COUNTY).**